## MASTERSON, ASSIGNEE, *v.* HOWARD.

1. Where a decree is entered upon an order taking a bill in equity as confessed by defendants for want of an answer, the only question for the consideration of this court on appeal is whether the allegations of the bill are sufficient to support the decree.

2. While the existence of war closes the courts of each belligerent to the citizens of the other, it does not prevent the citizens of one belligerent from taking proceedings for the protection of their own property in their own courts, against the citizens of the other, whenever the latter can be reached by process.

3. Before the late civil war certain citizens of California and Illinois had brought suit in the Circuit Court of the United States in Texas, against citizens of that State to quiet the title of the complainants to a tract of land there situated, and prevent harassing and vexatious litigation from a multiplicity of suits. On the 20th of June, 1866, a final decree was entered in that suit, the Circuit Court being then open in Texas, and active hostilities having there ceased, although the proclamation of the President announcing the close of the war in that State was not made until the 20th of August afterwards. *Held*, that the complainants had a right to proceed in the Circuit Court of the United States to protect their property situated in Texas from seizure, invasion, or disturbance by citizens of that State, so soon as that court was opened, whether official proclamation were made or not of the cessation of hostilities.

APPEAL from the Circuit Court for the Western District of Texas; the case being thus:

On the 17th of February, 1851, Bainbridge Howard, a citizen of Louisiana, filed his bill in the court below against a certain Herndon, and one Maverick, residents of Texas, setting forth that "on or about the 22d November, A. D. 1766, the government of Spain, according to the forms of law and by the regularly constituted officers of the government, granted to the Indians of the population of the Mission of San José, a certain tract or parcel of land, situated, lying, and being in what is now the county of Medina, in the State of Texas," &c., describing it.

The bill alleged that through regular mesne conveyances he, Howard, the complainant, was the owner of the land, "all of which will more fully and at large appear by the

grant to said Indians, and the chain of conveyances to your orator, to which for greater certainty at the hearing your orator begs leave to refer." It stated further that he was in possession, and that the defendants had made sundry locations of land certificates upon, and claimed patents to the said land, which constituted a cloud upon his title; wherefore, and to avoid a multiplicity of suits, he brought his suit in equity.

The defendants were interrogated as to what locations, &c., they had made within the boundaries of the described tract, and in conflict with the complainant's claim; and what locations and surveys others had made; and the bill prayed,

"That, by decree to be rendered herein, the locations, surveys, and patents, if any, made within the limits of your orator's tract or parcel of land aforesaid, may be determined and held to be void, and thereby the cloud impending over the title of your orator be removed; or that after establishment of the right in such manner as this court may direct by final decree to be then rendered, your orator may be quieted in his title and possession aforesaid, and all obstruction to the full and peaceable enjoyment of his property removed; or that, if your orator is mistaken in the special relief hereby asked, such other or further relief be extended to him, or decree rendered in the premises, as the nature of the case may require."

The complainant having died, a supplemental bill in the nature of a bill of revivor was filed, and presented in the name of his heirs, representing themselves, one as a citizen of California and the others as citizens of Illinois. Adopting the allegations of the original bill touching the grant of the land from Spain, it represented that the title granted by Spain to the Indians of San José became vested in one John McMullen, with actual possession; that McMullen's title had become equitably vested with possession in Howard; that Howard's title and possession were now in the complainants; and that the heirs of McMullen (whom the supplemental bill made parties) neglected to convey the legal title.

In October, 1860, the default of the defendants, Herndon and Maverick, in not answering the supplemental bill, was

entered, with an order that the bill be taken as confessed against them. In January, 1861, the court set aside this order so far as it affected the defendant, Herndon, and granted leave to him, "upon condition that he shall pay all the costs of the complainant in this case, for which execution may issue upon this decree," to answer until March following; but confirmed the order as to the defendant, Maverick, and decreed that the complainants "have and recover of said Maverick the tract of land in the original bill described; and that their title to the same be and is hereby decreed to be free from all clouds cast thereupon by said Maverick, and all persons claiming by, through, or under him. And that the patents, locations, and surveys obtained by said Maverick, in conflict with the title of the complainants, *which is decreed to be a good title,* are hereby adjudicated to be null and void." A reference was made to a master to ascertain the facts sought to be discovered, and a decree of specific performance was decreed against the heirs of John McMullen. An execution subsequently issued and a certain part of the costs were obtained, but not all.

The answer of Herndon having been filed without (as the complainant alleged, though this was denied on the other side) his having complied with the terms imposed, his default was entered on the 4th of March, 1861, and an order made taking the supplemental bill as confessed against him. On the 20th of June, 1866, the court ordered the answer of Herndon to be struck from the files, and confirmed and made final the order taking the supplemental bill as confessed against him. The court then proceeded to enter a decree joint in form against both Maverick and Herndon.

From this decree both parties appealed; the defendant, Herndon, through his assignee in bankruptcy, he having since the decree become bankrupt. This appeal had, by consent of the assignee, been dismissed as to him.

*Messrs. W. W. Boyce and G. W. Paschall, for the appellant:*

1. The decree against Maverick, entered January, 1861, was not a final decree. A reference was made to a master

to ascertain the facts sought to be discovered; and until the coming in of his report and subsequent action on the part of the court by way of decree, there was nothing finally decreed in the case.

2. Neither should Herndon's answer have been stricken from the files. An execution issued and the costs were certainly paid in part. No proof is given that they were not fully paid, and the assumption that they were not is hardly justified.

3. There was nothing in the bill or in the prayer of it, which justified the decree made that the title of the complainants was "a good title." This part of the decree was supererogatory. The claim of the defendants, their locations, &c., which the bill sought to have cleared away, might all have been bad without the complainant's title being good.

4. But without pressing these points, there remains an objection that goes to the foundation of the decree. The decree covers action had upon a motion of 4th March, 1861 (on which final action was had 20th June, 1866), without notice to the defendants, in behalf of citizens of California and Illinois against citizens of Texas. Now this court historically knows that secession was as much an accomplished fact on the 4th of March, 1861, as it ever was; that the army of the United States in Texas had surrendered to the State convention; that the secession ordinance had been ratified by the people, and all Federal officers in that State had ceased their functions. The civil war had in fact commenced. Neither party could take any order under the motion or upon the answer. The District Courts of Texas were not organized for any purpose, until the spring of 1866. And it was by the proclamation of 20th August, 1866, that the President declared that "subsequently to the second day of April, 1866, the insurrection in the State of Texas has been everywhere suppressed and ended, and the authority of the United States has been successfully and completely established in said State of Texas," &c.*

---

* Paschal's Annotated Digest, 1502.

The decree then being in behalf of citizens of California and Illinois (loyal States), against citizens of Texas (a State in rebellion), was, according to decisions of this court, a decree between alien enemies before the termination of the war, and, therefore, a nullity.* The case of *The Protector*† settled that the civil war was not closed in Texas until 20th August, 1866. And *Dean* v. *Nelson,*‡ and *The Railroad Company* v. *Trimble,*§ hold such decrees to be void.

*Mr. T. T. Crittenden, contra.*

Mr. Justice FIELD delivered the opinion of the court.

It is unnecessary to determine whether the decree against Maverick, entered in January, 1861, is to be deemed final or interlocutory. The subsequent decree against Herndon, entered in June, 1866, is in form against both of the defendants. The court below, in its subsequent proceedings, treated the latter decree as the one which finally determined the rights of the parties in the case, and from that decree the appeal is taken.

It is also unnecessary to determine whether the court erred in striking Herndon's answer from the files, as his assignee makes no objection to the ruling, or to the decree which followed. He has consented through his counsel to the dismissal of his appeal.

The only question, therefore, for our consideration upon the record, is whether the allegations of the supplemental bill, and of the original bill to which it refers, are sufficient to support the decree thus entered upon the default of the defendants. And upon this question there can be no doubt.

The suit was brought on the equity side of the court to quiet the title of the complainant to a tract of land situated in the State of Texas, and prevent harassing and vexatious litigation from a multiplicity of suits. The original bill alleges, in substance, that the complainant is in possession and seized in fee of the tract, deraigning his title from a

---

* United States *v.* Anderson, 9 Wallace, 70; Hanger *v.* Abbott, 6 Id. 532.
† 12 Wallace, 702.          ‡ 10 Id. 160, 172.          § Ib. 377.

grant issued by the government of Spain, in 1766, to Indians of the mission of San José, in Texas; that the defendants have made locations and surveys of large parcels of the tract under certificates or warrants issued by the Republic of Texas, by virtue of which they assert a right to the parcels thus located and surveyed, and have thereby created a cloud upon the title of the complainant, and disturbed his possession. The bill prays that the surveys and locations, and patents thereon, if any have been obtained, may be determined and declared void, and the cloud impending over the title of the complainant, be thereby removed; or that the right of the complainant being established, he may be quieted in his title and possession, and all obstruction to the peaceable enjoyment of his property be removed; or that he may have such other or further relief as the nature of the case may require. The original complainant having died, a supplemental bill, in the nature of a bill of revivor, was filed and prosecuted in the name of his heirs. It shows a change of parties consequent upon the death of the original complainant, and the death of several of the original defendants; and brings in as new parties the heirs of one John McMullen, through whom the complainant traced his title. But so far as it concerns the defendants, Maverick and Herndon, who are alone represented by the appellants, its allegations are substantially the same as those of the original bill.

The decree of the court entered on the 20th of June, 1866, responded substantially to these allegations. It adjudged the title of the complainants to the tract in question " to be free from all clouds cast thereon" by the defendants, Maverick and Herndon, and all persons claiming under them, and that " all patents, locations, and surveys obtained or owned" by them, in conflict with the title of the complainants, which was decreed to be a good title, were null and void, and directed the defendants to cancel and remove them. The clause of the decree directing that the complainants have and recover the land of the defendants may be supported under the general prayer of the bill, if, pending the suit, the defendants had gone into possession of any

of the parcels located and surveyed by them; and, if such were not the case, the clause could not in any way prejudice their rights.

But the counsel of the appellant Maverick, looking outside of the record to the condition of the country at the time the decree was rendered, takes the position that the decree is null and void because rendered by the court before the proclamation of the President of August 20th, 1866, announcing the close of the war in Texas, contending that, as the complainants were citizens of California and Illinois, and the defendants citizens of Texas, it was a decree in a suit between public enemies, and, therefore, void.

If it were true, which is not admitted, that the parties to the present suit were to be regarded as public enemies after the cessation of hostilities in Texas, and the restoration of the authority of the United States, until the proclamation of the President was issued, in August, 1866, the conclusion drawn by counsel would not follow. The existence of war, does, indeed, close the courts of each belligerent to the citizens of the other, but it does not prevent the citizens of one belligerent from taking proceedings for the protection of their own property in their own courts, against the citizens of the other, whenever the latter can be reached by process. The citizens of California and Illinois had a right to seek the courts of the United States in Texas, or to proceed with suits commenced therein previous to the war, to protect their property there situated from seizure, invasion, or disturbance by citizens of that State, so soon as those courts were opened, whether official proclamation were made or not of the cessation of hostilities.

In the case of *The Protector,** it was held that the war began in the Gulf States at the date of the proclamation of intended blockade of their ports by the President. That was the first public act of the executive in which the existence of the war was officially recognized, and to its date the courts look to ascertain the commencement of the war.

---

* 12 Wallace, 700.

And, so far as the operation of the statutes of limitation in the several States is concerned, to determine the period which must be deducted for the pendency of the war from the limitation prescribed, it was held in the same case that the war continued until proclamation was in like manner officially made of its close. This is the extent of the decisions of this court.*

It is well known that before such official proclamation was made courts of the United States were held in the several States which had been engaged in the rebellion, and their jurisdiction to hear and determine the cases brought in them, as well before as after such proclamation, is not open to controversy.        JUDGMENT AFFIRMED.

[See the next case.]

---

* Brown *v.* Hiatts, 15 Wallace, 184; Adger *v.* Alston, Ib. 560.