Rodgers *v.* Dibrell.

JNO. B. RODGERS and W. R. SMITH *v.* M. C. DIBRELL *et al.*

1. SUPREME COURT PRACTICE. *Decree overruling demurrer. Effect thereof.* A decree of this court overruling a demurrer to a bill and remanding the cause "for an answer and other proceedings," only adjudges that the bill contains sufficient equity to require an answer.

2. CHANCERY PLEADINGS AND PRACTICE. *Answer. Consolidation.* If the defendant to two separate bills, filed against him by different judgment creditors to reach the same land, make one answer to both bills, he thereby virtually consolidates them, and they may be heard together as one cause, or as two causes under one style, without any order of consolidation.

3. SAME. *Bill of review.* Where the proceedings in a cause are regular, the decree in accord with the pleadings, and proper upon the facts found, the court, upon a bill of review for errors apparent, cannot look to the evidence to see whether the conclusions of fact are correct; and if it be taken that there was no proof, because the decree recites that the cause was heard "on bills, answers and exhibits," matter set up in evidence and not proved would not alter the result.

4. SAME. *Bill to retry cause does not lie. When.* An original bill does not lie to retry a cause because error has supervened, either by the negligence of the party or the wrong conclusion of the court.

5. SAME. *Adjudications during the war.* The adjudications of the courts pending the war, in the ordinary litigation between parties, were valid.

6. SAME. *Re-entry of decree.* The re-entry of a decree in September, 1865, confirming a sale, which had been originally entered in March, 1862, would be erroneous if the first entry were valid, and good if the first entry were for any reason void.

7. SAME. *Purchaser before lis pendens.* A purchaser of land before the commencement of the *lis pendens* to which he is no party, cannot be prejudiced thereby, nor aggrieved by any fraud in its conduct or in the decree rendered, and may assert his rights without reference thereto.

8. ASSIGNMENT. *Title bond. Insufficient proof.* Proof of the handwriting in which an assignment of a title bond is written, without any evidence of the time when the endorsement was made, that there was any consideration for it, or that it was accepted, is insufficient to establish a valid assignment.

Rodgers v. Dibrell.

9. SAME. *Effect of decree.* Where the court had acquired jurisdiction of
the person of the defendant and the subject-matter before the late
civil war, the complainants were not stayed in the prosecution of the
suit by anything the defendant might do, or consider himself com-
pelled to do without their participation, the proceeeding being reg-
ular and the decree just.

FROM WHITE.

Appeal from the Chancery Court at Sparta.    W. G.
CROWLEY, Ch.

T. & D. L. SNODGRASS for complainants.

J. A. GARDENHIRE and J. J. VERTREES for de-
fendants.

COOPER, J., delivered the opinion of the court.

On December 1, 1860, M. C. Dibrell, as a judg-
ment creditor of John B. Rodgers, an execution on
the judgment being made an exhibit, filed his bill
against John B. Rodgers, G. W. Gibbs and E. Meredith,
to subject to the satisfaction of his judgment the in-
terest of Rodgers in a tract of land alleged to be held
by him under a title bond from Gibbs, although he
had paid the purchase money, and which land the de-
fendant Meredith had sold under an execution against
Rodgers and bought at the sale.    All of the defendants
answered the bill.

Gibbs admitted that he had sold the land to Rodg-
ers, giving him a bond for title, and that all of the
purchase money had been paid except about $62.50.
Meredith said he had sold the land under an execu-
tion and purchased it at the price of $100.    Rodgers

answered that complainant had become his surety and
liable to pay as stated, "but which respondent is de-
termined he shall not do if he can avoid it." He
admitted that he had purchased the land from Gibbs,
had paid the purchase money, and held Gibbs' bond
for title. He further stated that the land was "in-
volved," by the fact that his son-in-law, W. R. Smith,
had accepted and paid for him a draft for $1,100, and
had advanced other moneys for him, in consideration
whereof respondent had transferred to him the title
bond for the land, by an endorsement on the back
thereof, "as will be seen by a reference to the same,
dated the 27th day of April, 1857." A copy of the
title bond was made an exhibit, and showed an assign-
ment as of that date. Said Smith, the answer adds,
"being respondent's son-in-law, with abundant means,
has not yet said to respondent what he did pay, but
which respondent is resolved to secure and pay at no
distant day." In the meantime, John S. Vickers, as
a judgment creditor of Rodgers, filed a similar bill to
that of Dibrell, seeking to reach the same land. Rodg-
ers appeared, and on March 21, 1861, obtained time
to answer each of these bills by the May rules, "so
as not to delay the hearing." His answer, filed May
6, 1861, purports on its face to be filed to both bills,
and virtually, although not in so many words, con-
cedes the existence of each of the demands as claimed.
On September 19, 1861, a final decree was rendered
in Dibrell's case, but under the style of M. C. Dib-
rell *et al. v.* John B. Rodgers *et al.*, thereby, as well
as by the terme of the decree, treating the causes as

heard together. The decree declares the amount of the indebtedness of Rodgers to Dibrell to be $918; of Rodgers to Vickers to be $1,115.56, and of Rodgers to Meredith to be $115.12; that Rodgers had bought the land from Gibbs, taken a bond for title, paid the purchase money, "and has a complete [equitable title."

The land is ordered to be sold on twelve months' time, the purchase money to be first applied to the payment of Dibrell's debt, interest and costs; second, to Meredith's debt; third, to Vicker's debt, and any surplus to be paid to Rodgers. The land was sold under the decree, on November 4, 1861, and the sale confirmed on March 20, 1862. The sale was again confirmed September 21, 1865, as if no previous confirmation had been had.

On August 30, 1867, the bill now before us was filed by Jno. B. Rodgers and W. R. Smith, against M. C. Dibrell, G. G. Dibrell, G. W. Gibbs, John S. Vickers and certain persons as vendees of the land under M. C. Dibrell and in possession. A transcript of the record of the previous case is made an exhibit "for the purpose," says the bill, "of reviewing the same, and to show the errors, and also as a basis to show the fraudulent oppression of complainant Rodgers." Then follow certain charges, consecutively numbered, thus:

1. Complainants charge that at the filing of Dibrell's bill and prior thereto, from the 27th of April, 1857, complainant Rodgers had neither legal nor equitable title to the land in controversy, "as will be seen

by a copy of the bond and transfer on the back of the same to complainant W. R. Smith, as exhibit to respondent John B. Rodgers' answer in said cause."

2. Complainants charge that the legal title to said land was in defendant G. G. Dibrell, conveyed to him in trust by G. W. Gibbs, the title bond to Rodgers being signed by him as trustee, as well as by Gibbs.

3. The second bill filed in the cause was not answered, nor consolidated with Dibrell's bill, nor were *pro confesso* orders taken, and consequently the bill was not in a condition for final hearing when the decree was pronounced.

4. The court was a rebel, not a legal court.

5. The defendant Dibrell, fearing his title in this regard, had the report of sale again confirmed in September, 1865. "For all which," says the bill, "complainants charge that said decrees are erroneous and fraudulent and should be reversed."

Complainants further charge that in consequence of their Union sentiments, and because one of them, Smith, was a citizen of a Northern State, they were not allowed to attend and look after their interests in said cause. Complainant Rodgers also files as an exhibit the copy of a letter written by M. C. Dibrell to him, under the date of July 26, 1861, which he charges to be a threatening letter. He says that by reason of his Union sentiments he was driven from home, and pending the litigation and during the period of redemption, compelled to seek safety in the Federal lines.

The chancellor sustained a demurrer to this bill,

but upon appeal to this court, his decree was reversed,. the demurrer overruled and the cause remanded "for· an answer and other proceedings." The defendants,. Dibrell and the parties in possession of the land as. vendees under him, filed an answer denying the facts. upon which the equity of the bill, as an original bill,. is made to rest. These defendants have also appealed from the chancellor's decree.

No opinion was delivered by this court when the· demurrer was overruled, and the decree then entered; simply reverses the decree below and remands for an, answer and further proceedings. In such cases, the· ruling of this court is treated as conclusive as to the· matters adjudged: *McNairy* v. *Nashville,* 2 Baxt., 251; *Murdock* v. *Gaskill,* 8 Baxt., 26; *Jameson* v. *McCoy,*. 5 . Heis., 108. The only matter adjudged in this case was that the bill contained sufficient equity to require· an answer.

The adjudication would not apply to the bill as a bill of review for errors apparent, for these errors. must appear on the face of the pleaddings and decrees which were made exhibits, and must be specific-. ally pointed out: *Brown* v. *Severson,* 12 Heis., 381; *Livingston* v. *Noe,* 1 Lea, 62.

The bill, while it charges error generally, does not specify any error apparent in the pleadings and decrees of the original cause. The only point made that has. even the semblance of an error apparent, is the aver-ment that the second bill, that of Vickers, was not in a condition to be heard, there being no answer thereto *pro confesso,* or order to consolidate. But Rogers'·

answer is expressly to both bills, the greater part being taken up with explaining the claim of Vickers, and no *pro confesso* order was required. The absence of a *pro confesso* is, moreover, no ground for a bill of review: *LaGrange, etc., R. R. Co.* v. *Rainey,* 7 Cold., 421. By filing an answer to the two bills, Rodgers virtually consolidated them, and they might well be heard together as one cause, or as two causes under one style. No order of consolidation was required for this purpose.

These bills were filed by the complainants as judgment creditors of a common debtor, to reach his equitable interest in certain land. The decree finds that they were judgment creditors as claimed, and that the debtor has "a complete equitable title" to the land, and orders a sale in satisfaction of the debts. The proceedings are all regular, and the decree in accord with the proceedings, and the proper decree upon the facts found. The court cannot look to the evidence to see whether the conclusions of fact were correct; and if it be conceded that there was no proof, because the decree recites that the cause was heard "on bills, answers and exhibits," the result would be the same, the title bond showing that the debtor had an equitable title, and the assignment set up by the answer being matter in avoidance and not proved. It cannot be inferred merely from the fact that G. G. Dibrell executes, as trustee for Gibbs' creditors, with Gibbs, the title bond, that the legal title to the land is in him. For the debts may have been extinguished by the sale and the title revested in Gibbs: *Carter* v.

*Taylor*, 3 Head, 30. And this fact is proven by G.
G. Dibrell in this case. Rodgers sets up no such
defense in his answer, and if he had, the equitable title
would still be in him, and it was this equitable title
that was sought to be reached and was subjected.

The present bill, therefore, necessarily fails as a bill
of review for errors apparent. And an original bill
does not lie to retry a cause because error has super-
vened, either by the negligence of the party, or the
wrong conclusion of the court upon the facts: *Stewart*
v. *Mizell*, 8 Ired. Eq., 242; *Knight* v. *Atkisson*, 2
Tenn. Ch., 384; *Fitzwater* v. *Kent*, at this term.

It has not been argued that the court was not
competent to render the decree, and it is too well
settled to require comment, that the adjudications of
the courts, pending the war, in the ordinary litigation
between parties, were valid.

The only remaining suggestion of the bill is in
relation to the second confirmation of the sale in Sep-
tember, 1865. If the first confirmation was valid,
the second was erroneous, but would not prejudice the
complainants. If the first was void for any reason,
the second would be good. The fact is not material,
except as a matter of cost, in any aspect of the case.

The bill can only be sustained, if at all, as an
original bill for fraud. In this view, the two com-
plainants occupy different ground. The complainant,
Smith, according to the statements of the bill, acquired
his interest in the property in April, 1857, long be-
fore the commencement of the former suit. He was
no party to that suit, and not bound by the proceed-

ings. It is only a purchaser *pendente lite* or subsequent to a decree, who has a right to impeach the decree by a bill of review, or original bill in the nature of a bill of review. A purchaser before the commencement of the *lis pendens,* to which he is no party, cannot be prejudiced thereby, nor aggrieved by any fraud in its conduct or the decree rendered. Fraud without damage, the courts have always said, gives no cause of action: 3 Bulst., 95; *Whitson* v. *Gray,* 3 Head, 442. To be relieved against, it must be operative, and injurious to the party seeking relief: *Cunningham* v. *Shields,* 4 Hay., 44; *Cunningham* v. *E. & K. R. Co.,* 2 Head, 29; *Waterbury* v. *Netherland,* 6 Heis., 523; *Flippin* v. *Knaffle,* 2 Tenn. Ch., 240. The former decree did not stand in the way of the assertion of his rights at any time.

If we treat the present suit as brought for the purpose of establishing the right of complainant Smith to the land, the issue is directly made by the answer of the defendants that he has no right whatever. The burden is upon him to show that the assignment was made and accepted in good faith and for a valuable consideration. The language of Rodgers in his answer in the former case, and the language of this bill, is peculiar. It insinuates, rather than asserts the assignment. The proof shows that Rodgers had continued in possession of the land, paying taxes and using it as his own. The only testimony introduced in relation to the assignment is confined to proving that it is in the handwriting of Rodgers. There is no evidence when the endorsement was written on the title

bond, that there was any consideration for it, or that it was accepted. Neither Rodgers or Smith has come forward as a witness to sustain the alleged transaction. In other words, the complainant Smith fails to establish any title to, or interest in the land. And there is probably no doubt that he has allowed his name to be used in this litigation for the benefit of his co-complainant. The bill, as an original bill, for any purpose fails, therefore, as to him.

The bill, which is sworn to by Rodgers, says that at the filing of Dibrell's bill, complainant Rodgers "had neither legal nor equitable title to the land in controversy." If so, the bill not showing that he has since acquired any title, he can in no event recover the land in this suit. And we have the curious result that in a bill, the main object of which is to recover land, one of the complainants disclaims all title to the land, either legal or equitable, and the other has failed, as against the defendants, to establish any title.

The court, in the original cause, had jurisdiction of the person of the present complainant, and of the subject-matter of litigation. If fraud occurred, it must have been in obtaining a decree contrary to the justice of the case, by some unfair conduct on the part of those persons in whose favor the decree was rendered. There is nothing in the bill that implicates either Vickers or Meredith, in whose favor the decree was also rendered, and Meredith is not even made a party defendant. And the decree is not unjust in the sense that it gave Dibrell and Vickers more than they were

·entitled to, if Rodgers had an equitable title to the land, for Rodgers in his answer virtually admits their ·debts as claimed.    If he had been present, the decree, in view of the admissions of his answer, must have been the same.    The only thing he could have done would have been what has, with every opportunity, been unsuccessfully attempted in the present suit, namely, to show that he had previously assigned the land.    In view of the result of this suit on that point, the former decree was in no sense unjust.

The equity of complainant Rodgers to set aside the former decree, rests altogether on the allegation that, in consequence of his Union sentiments and the alleged threatening letter of Dibrell, he was not allowed to attend and look after his interest in the cause. The letter of Dibrell is not a threatening letter, but ·one of friendly, if mistaken, advice.    It advises him to acquiesce in the action of the State in seceding from the Union, or to go to another State.    The relations of the parties were friendly, and the object ·of Dibrell seems to have been entirely in unison with their relations.    There is not a threatening word in the letter, nor is there anything to connect Dibrell with any popular feeling against Rodgers by reason of his Union sentiments.    The case is, therefore, in this ·aspect, narrowed down to the point whether the absence of Rodgers because of his Union sentiments, in other words, because he chose to join the Federal army, would operate to stay judicial proceedings against him.    If he be treated as a citizen of the State, the ·opposing litigants were not to be stayed in the asser-

tion of their rights against him by anything he might do, or be compelled to do, without their participation. And if he became an alien enemy, it is now well settled that existing litigation might be prosecuted or new litigation commenced against him. An alien enemy may be sued: *McVeigh* v. *United States*, 11 Wall., 259; *Masterson* v. *Howard*, 18 Wall., 99; *Crucher* v. *Hind*, 4 Bush., 363; *Dorsey* v. *Kyle*, 30 Md., 512; *Degiverville* v. *DeJarnette*, 13 Law Reg., 318.

Reverse the decree and dismiss the bill with costs.