Benton v. Holliday.

BENTON v. HOLLIDAY.

1. PRACTICE IN SUPREME COURT: *Appeal from default decree.*
   The only question for the consideration of the Supreme Court, upon a defendant's appeal from a default decree duly rendered against him, is, whether the allegations of the complaint are sufficient to authorize the relief granted by the decree.

2. ATTORNEY'S FEE: *Agreement to pay by assignor of note for collection.*
   B owed H a debt, and as collateral security for its payment, assigned to him a note and mortgage on land to secure it, executed to B by P, authorizing H in the assignment indorsed upon the note, to foreclose the mortgage against P, and to pay his debt and the solicitor's fee for foreclosing, out of the proceeds of the sale of the land. In a contention that the agreement for payment of the attorney's fee was in the nature of a penalty, and without consideration and void: *Held, aliter:* that by the assignment B made H his agent to foreclose the mortgage and collect the mortgage debt for their mutual benefit, and the duty and responsibility assumed by H were a sufficient consideration for the agreement.

APPEAL from *Garland* Circuit Court.
Hon. J. M. SMITH, Circuit Judge.

*Clark & Williams* for appellant.

1. The Greens had a right to make the contract discharging the note and mortgage. They had no knowledge

that either the note or mortgage had been assigned. In such case the assignee takes subject to all equities, before the assignment and up to the time the maker had notice of the assignment. *Wade on Notice, secs. 431–3; 3 N. H., 359; 19 John., 341; 18 Ib., 493; 16 Ib., 226; 8 Me., 77; and especially 2 John. Ch., 441, 479; 9 S. & R., 137; 3 H. L. Cas., 703; 5 Jur. N. S., 129; 36 Penn. St., 108; 2 Mass., 96; 10 Me., 244.*

2. It was an error to render a judgment against the Greens and foreclose the mortgage, on a note made by Benton to Holliday for $700.

3. The agreement in the assignment to pay attorney's fees was *nudum factum* and void. *Boozer v. Anderson, 42 Ark.* The court erred in rendering a personal judgment against Benton for $250 attorney's fees. Moreover, such fees were only to be paid as expenses out of the proceeds of sale. There was no contract for fees upon which a general judgment could be rendered.

*U. M. & G. B. Rose* and *F. W. Compton* for appellee.

Benton certainly had notice of the assignment of the mortgage, and the Greens have not appealed. The argument that the assignee of overdue paper takes subject to all equities, etc., has no foundation to stand upon.

In *Boozer v. Anderson, 42 Ark., 167,* this court held a stipulation in a note to pay attorney's fees for collecting it, if collected by suit, void. But this is a different proposition. In a mortgage or deed of trust, a reasonable fee for the expense of foreclosing may be contracted for, and will be enforced. (*1 Jones on Mortg., sec. 359; 2 Ib., sec. 1606.*) When Benton assigned the note and mortgage to Holliday, he, in effect, made the latter his agent for the purpose of collecting the amount due on the mortgage to pay the debt due to himself out of the proceeds, and to pay the remainder, if any, to Benton.

The appellant did not object to the decree in the court below. *Gantt's Digest, sec. 1100.*

Smith, J.   In March, 1874, John T. and Peter E. Green made to the appellant, Benton, their two several promissory notes, one for $3,300 and the other for $2,600, due in one year.   And to secure payment of the same they executed two mortgages on eighty acres of land in Garland county, embracing the Mountain Valley Springs, in which mortgages the wives joined, relinquishing dower.   In August, 1877, Benton made to Holliday his note for $700, due six months after date, and as collateral security transferred to Holliday the note first above mentioned, with the mortgage made to secure it.   The assignment indorsed on the note authorized Holliday to institute suit for the foreclosure of the mortgage, and stipulated that all expenses and attorney's fee connected with said foreclosure should be paid out of the proceeds of sale.   And the note and mortgage of the Greens were delivered to Holliday, in whose hands they remained.

After this transfer, Benton brought one or more suits, in his own name, in the Garland Circuit Court, to foreclose these mortgages.   The proceedings were without the knowledge of Holliday, and he was not a party.   But as soon as he found out that such proceedings were pending, he applied to be made a party.   In the meantime the Greens and Benton had adjusted their differences, and had entered into an arrangement by which the mortgages were to be canceled, and the property converted into a joint stock company, the Greens to have $10,000 of the capital stock and Benton the remainder, $35,000.   And the suit or suits were accordingly dismissed.   Holliday's debt not being provided for in this arrangement, he, in March, 1879, filed his bill against the Greens and their wives and Ben-

ton, praying for a foreclosure of the mortgage for $3,300, which had been assigned to him as collateral security for his debt of $700. The Greens defended on the ground that they had no notice of the assignment to plaintiff, and that by the arrangement agreed upon between themselves and the mortgagee, the mortgage debt and security became extinguished. Benton was served with process, but not having appeared the bill was taken as confessed by him. And at the hearing the court rendered a decree against the Greens and Benton upon the $700 note, with the interest accrued, and for a foreclosure and sale of the mortgaged property, and also a personal judgment against Benton for $250, solicitor's fee. From this decree Benton alone has appealed. And it is argued that the granting of any relief to the plaintiff was erroneous ; that the Greens, having no knowledge of the assignment of the note and mortgage to Holliday, had a perfect right to discharge the same, and that Holliday, as the holder of past-due paper for collateral security, took subject not only to all equities existing between the original parties to the paper at the date of assignment, but also subject to all that came into existence down to the time that the maker of the paper had notice of the transfer.

Whether this argument has any foundation in law or reason to stand upon, we have no occasion to decide. It is our settled practice not to disturb decrees for errors committed against parties who have submitted to them. *Dooley v. Dooley*, *14 Ark.*, *125; Ringgold v. Stone*, *20 Ib.*, *526; Clark v. Barnett*, *24 Ib.*, *30.*

Of one thing we are quite sure: An assignor can never be heard to say that he has had no notice of an assignment which he has himself made. Moreover, it is hard to understand how it was, so long as Holliday had the note and mortgage in his possession, that Benton and the

Greens could make any agreement between themselves which could bind him.

**1. PRACTICE IN SUPREME COURT.** **Appeal from default decree.** But these things are not in the case. The decree against Benton being for want of an answer, the only question for the consideration of this court on his appeal is, whether the allegations of the bill are sufficient to authorize the relief which the Circuit Court granted. *Masterson v. Howard, 18 Wall., 99.*

**2. ATTORNEY'S FEE.** **Agreement by assignor of note to pay.** There can be no doubt of the correctness of the decree granting foreclosure. And as to the judgment against Benton for the solicitor's fee, there is no objection in principle to enforcing an agreement made by the pledgor of a chose in action to pay the expense incurred in prosecuting it to judgment. In *Boozer v. Anderson, 42 Ark., 167,* we held that a stipulation in a promissory note to pay the attorney's fee for collecting it, was in the nature of a penalty invoked by the maker upon himself in case of his own default. A doubt was also expressed whether there was any consideration for such a promise. But a different proposition is involved in the present case. When Benton assigned the note and mortgage to Holliday, he, in effect, made Holliday his agent for the purpose of collecting the amount due on the mortgage, to pay the debt due to himself out of the proceeds, and the residue, if any, to Benton. The foreclosure proceedings would be as much for the benefit of Benton as of Holliday. Thus, Holliday took upon himself a certain burden and responsibility, which was a sufficient consideration for the promise to pay the solicitor's fee that might be incurred by him. True, Benton agreed that payment might be made out of the proceeds of the sale of the mortgaged property, and the judgment is against him personally. But this agreement must refer to what should be coming to him out of those proceeds, not to any surplus that might remain for the

mortgagors after satisfaction of the mortgage debt. And as these proceeds barely sufficed, after the payment of costs of suit and expenses of sale, to discharge Holliday's debt with the interest, for which also there was a judgment against Benton, it is immaterial to Benton how the proceeds are applied. For in either case a judgment *in personam* for $250 will remain against him.

Decree affirmed.