BLISS et al. v. SPANGLER. †

(Circuit Court of Appeals, Ninth Circuit.   October 19, 1914.)

No. 2370.

**1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—BUCKLE.**

The Spangler patent, No. 972,937, for a clasp or buckle, while its elements are all or nearly all old, embodies a new combination of utility and requiring more than mechanical skill; also *held* infringed by the device of the Bliss patent, No. 1,034,681.

**2. PATENTS (§ 25*)—"INVENTION"—WHAT CONSTITUTES.**

An aggregation and association of old elements may constitute invention, if it rises above mere mechanical skill and produces utility of a superior virtue to that previously attained.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–29; Dec. Dig. § 25.*

For other definitions, see Words and Phrases, First and Second Series, Invention.]

**3. PATENTS (§ 39*)—INVENTION—"NOVELTY."**

Novelty, appertaining to invention, may be but a simple change in construction, if productive of a marked advancement in utility.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 46; Dec. Dig. § 39.*

For other definitions, see Words and Phrases, Patentable Novelty; also Second Series, Novelty.]

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Olin Wellborn, Judge.

Suit in equity by George P. Spangler against Walter B. Bliss and the Fresno Monogram Adjustable Buckle Company. Decree for complainant, and defendants appeal. Affirmed.

G. E. Harpham, of Los Angeles, Cal., for appellant Fresno Monogram Adjustable Buckle Co.

Neighbours, Sproul & Hoag, of Los Angeles, Cal., for appellant Bliss.

Raymond Ives Blakeslee, of Los Angeles, Cal., for appellee.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge.   The appellee, who was complainant in the court below, made application May 5, 1910, to the Commissioner of Patents for patent on a clasp or buckle of which he claimed to be the original, sole, and first inventor, and was on October 18, 1910, awarded letters patent numbered 972,937. Claiming that defendants Fresno Monogram Adjustable Buckle Company, the Modern Sales Agency of America, Limited, and Walter B. Bliss were jointly infringing his letters patent, he instituted the present suit to enjoin such infringement.   Decree pro confesso was entered against the defendant Modern Sales Agency, and the defendants Adjustable Buckle Company and Bliss answered separately.   Bliss denies that the defendants have jointly, as partners, or separately manufactured, or participated in the manufacture, use, and sale of, complainant's clasp or buckle, and denies infringement jointly or separately.   The Buckle Company makes

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied November 18, 1914.

the same answer, and sets up anticipation, and, in view of the prior state of the art, that what complainant claims to have discovered is not the result of patentable invention, but of ordinary mechanical skill. The trial court found against defendants, and decreed that they be permanently enjoined from further infringing complainant's letters patent.

[1] The complainant's alleged invention comprises a plate or shield suitable for engraving or stamping thereon an initial or monogram, or such other device as may be desired, with longitudinal curvature suitable to conform it to the line of extension of the belt when placed around the body. The shield is constructed with lateral flanges extending inwardly, thus providing a groove longitudinally underneath the shield, through which the lap, or, as it may be called,. the butt end, of the belt, may be drawn. Across the flanges at one end is provided a flat bar, and at the other a pin or bar upon which is pivotally mounted a contrivance consisting of a metallic tongue or plate, extending when in use towards the flat bar at the other end of the shield, which tongue is provided with a stud extending towards the shield, and, when closed, presses up or outwardly against it. The tongue is also curved at the end in the opposite direction from the stud and shield, so as to form a hook. The butt end of the belt is attached to the buckle by simply passing it in and through the groove under the pin upon which the tongue is pivoted and the flat bar at the other end of the shield. The belt being provided with holes appropriately spaced, the stud on the tongue is caused to register with one of the holes, and when the tongue is clasped up or outwardly against the shield the belt is secured or made fast, so that it will not move longitudinally. The other or free end of the belt is provided also with a metallic tongue, called in the patent a "spring tongue," containing a slot crosswise near the end; the tongue being attached or fastened to the belt by means of ears projecting from the face thereof and away from the plate or shield, provided with holes, which ears extend through the belt, and are fastened by a pin extended through the holes underneath the belt. The spring tongue is thereby made detachable from the belt. In application, the spring tongue, being so detachably attached to the free end of the belt, is passed between the flat crossbar and the extended butt end of the belt, until the slot in the spring tongue registers with the hook or the swinging tongue, and the two parts of the buckle are interlocked by the hook drawing into the slot, and thus the ultimate function of the buckle is accomplished. Spangler's claim is for:

"A clasp or buckle, comprising a shield or plate provided with a rearwardly disposed bar spaced therefrom, holding means for connecting the shield or plate with a strap or other device, interlocking elements, one of said interlocking elements being connected with said shield or plate rearwardly thereof, and holding means for connecting the other of said interlocking elements with a strap or other device; one of said interlocking elements consisting of a spring tongue adapted to be passed between said shield and said bar and being provided with an opening, and the other of said interlocking elements being formed for hook engagement with said spring tongue through said opening."

Logically, in the course of our investigation, we may determine whether there has been anticipation of the complainant's patent. Certain patents, six in number, were introduced at the trial for showing

the prior state of the art, all of which it is claimed anticipate the alleged invention of complainant. We may notice some of these patents briefly.

The first introduced, or the Busch patent (being for improvement in buckles), issued October 8, 1872, No. 132,051, is a crude affair, consisting simply of a shield underneath which at one end are attached two hooks, which are hooked into holes in the belt for holding purposes. In the center underneath is attached a crossbar pivoted on lugs, one on each side of the shield, suitable for hook engagement, the hook being attached to the other end of the belt, and thus the belt is interlocked. The shield serves in a measure only to mask the buckle fastening.

The Koopman patent, No. 544,858, issued August 20, 1895, consists of a belt plate to which one end of the belt is attached in any suitable manner. This plate is provided with a hook underneath, which engages a slot in what is termed an end piece attached to the other end of the belt, and thus the opposite ends of the belt are interlocked.

The Graves patent, No. 556,413, issued March 17, 1896, has a shield of small dimensions, with side projections extending inwardly, provided with holes in which is pivoted a metallic tongue, which has a stud extending, when engaging the belt, up or outwardly against the shield through holes in the belt. A duplex sliding loop is also provided, which slides in what are termed "guide eyes" underneath the belt. When the tongue is engaging the belt, one end of this loop is moved backwards, so as to pass over the end of the tongue, and thus the belt is held in place from movement longitudinally; the other end of the belt being permanently fastened with rivets to the shield.

The Mixer patent, No. 672,793, issued April 23, 1901, consists simply of a shield or plate bent on itself; the outer portion forming what is termed the "outer plate" and the inner the "base plate." The latter is described as an elongated strip of sheet metal, provided with a hook turning outward, which, when in position, is underneath the outer plate about the center. One end of the belt is attached to this device, and the other to a metallic plate, the end of which curves inwardly, forming a hook. The two ends of the belt are interlocked by means of these hooks coming into contact one with the other.

It is unnecessary to take special note of the two remaining patents, one of which was issued March 2, 1897, and the other July 2, 1878, except to observe that the latter patent has the swinging tongue with the stud on the under side, which engages the trace; the patent being for a trace buckle.

On an analysis of plaintiff's claim, it will be found to consist of:

First. A shield or plate.

Second. A rearwardly disposed bar spaced therefrom.

Third. Holding means for connecting the shield or plate with the strap.

Fourth. An interlocking element (one of two) connected with the shield or plate rearwardly thereof.

Fifth. Holding means for connecting the other of the interlocking elements with a strap; and

Sixth. The other of said interlocking elements, being a tongue having a spring quality.

The first of said interlocking elements has a lip or hook, and the second a slot, which provide the means for interlocking the ends of the belt. The third element, or the holding means, comprises the stud which engages the strap and holds it secure to the buckle. Considering the state of the art, it would seem that none of these elements are new. All had been in use, or the subjects of prior invention, in some form or other. But it is apparent that no such combination of the elements had ever been aggregated until the complainant produced his alleged invention, and in this consists the novelty, if novelty there be, in the contrivance.

[2] It has long since been settled that an aggregation and association of altogether old elements may constitute invention, if it escapes or rises above mere mechanical skill and produces utility of superior virtue to that previously attained. Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177.

[3] It may happen that a simple change in construction is productive of a marked advancement in utility, and this has been accounted novelty appertaining to invention. The Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154. If this be invention, why may not the same thing be predicated of a combination of old elements which is productive of a like result? The proposition must receive an affirmative answer.

It is hardly probable that complainant's device, constructed and articulated as it is, is the result of mere mechanical suggestion. It is manifestly not a contrivance that the ordinary mechanic would devise in the application of known elements. Otherwise, why was it not struck upon before? In all the patents evolved prior in time, as the evidence shows, none has proven so useful as this one. While the others have seemingly fallen into almost entire disuse, it has rapidly advanced to the position of a good seller on the market, thus in actual utility displacing all others. The complainant pertinently states in his patent that his invention relates to—

"clasps or buckles, or similar adjustable connection and attachment devices; and it has for its object to provide improvements with relation thereto which will be superior in point of positiveness in operation, convenience in use and manipulation, facility in installation or connection and disconnection, with respect to working position, relative simplicity and inexpensiveness in construction, and general efficiency. The invention has for its particular object the provision of an improved clasp or buckle which will be more sightly in appearance and more conveniently manipulated in service than are devices of the same general character now customarily employed, and the use of which is attended by less injury to the belt or other device or object in connection with which it is employed."

We think, under the proofs, that the device has very substantially effectuated the object of the complainant thus delineated, and constitutes invention. Nor is it subject to the criticism that the combination is the result of mere mechanical skill.

It further appears that the defendant Bliss has acquired a patent of later date, being a patent for a buckle, No. 1,034,681, issued August 6, 1912, which in contrivance has a shield with the side flanges producing a boxlike appearance, of the same type as complainant's invention. It also has two flat crossbars reaching across underneath from one

flange to the other, located one at each end of the shield. Underneath the shield, outside of the flat bar at one end (the bar being called in the patent a keeper), is constructed a stud with kerfs on the sides near the top, or with a head, and the butt end of the belt, being provided with holes spaced in the usual way, is passed in from the opposite end of the shield, between it and both flat bars, and one of the holes registers with the stud. It is thus secured from longitudinal movement. To the other end of the belt is riveted a plate, containing a slot longitudinally, which slot converges in width toward the end furthest from its attachment with the belt. The interlocking process is accomplished by inserting the end of the plate between the keeper and the shield. The slot is caused to register with the stud, and when drawn back the diminished end of the slot is drawn into the kerfs or under the head on the stud, and is thus made fast when in use. It has been claimed in argument, although no such claim is made in the patent, that the plate containing the slot is a spring plate, and that it may be so considered.

The defendant Bliss has constructed other devices of similar pattern, one of which is practically the same, the other being provided with lugs extending from the flanges underneath, which are designed to, and do in practical application, take the place of the flat crossbars. These devices, complainant contends, infringe his patent. With this the defendants take issue.

The defendants have the advantage of the presumption arising, where two patents are issued for similar devices, that there is a substantial difference between them. Boyd v. Janesville Hay Tool Co., 158 U. S. 260, 15 Sup. Ct. 837, 39 L. Ed. 973; Gillette Safety Razor Co. v. Durham Duplex Razor Co. (D. C.) 197 Fed. 574. That the two devices, the Spangler patent and the Bliss patent, are very similar, there can be no controversy. Indeed, they are so similar that we need consider only a few features where there can be a question as to their functional differences.

The stud extending from the plate or shield in the Bliss patent is without question a mechanical equivalent of the stud extending from the swinging tongue in the Spangler patent. They both perform the function of securing the butt end of the belt to the shield and preventing its movement longitudinally in substantially the same way. The expert witness for complainant affirms this, and those for the defendants do not controvert it.

As to the interlocking devices in the plaintiff's patent, these consist of a hook on the swinging tongue which engages a slot on the spring tongue. This takes place between the bars, or rather the flat bar and the bar upon which is pivotally mounted the tongue, attached across from the flanges of the shield. In the Bliss patent the devices consist of a stud attached to the shield underneath, with kerfs, or a head, and a plate attached to the loose end of the belt, containing a slot, different in shape, it is true, from the slot in plaintiff's device, but nevertheless a slot. The engagement is had by passing the slot over the stud, pressing it down and then drawing it back, so as to bring the converging part of the slot into correlation with the kerf or head. The two ends are thus locked. This takes place at a point outside of

the crossbars. But if it took place between the bars, there could be no substantial difference. That one of these engaging devices is a hook and the other a pin or stud, and one a slot extending crosswise of the spring tongue and the other a converging slot extending longitudinally with the plate or tongue, it seems to us, can make no material mechanical difference in the engagement. They perform the same function, for all practical purposes, in practically the same way. One of defendants' expert witnesses, among other things, says:

"As a matter of fact, I judge the kerfs on the studs in Exhibits E and F are for the same purpose as the hooked end of the plate, *10*, in the Spangler patent."

And the plaintiff's expert says:

"Considering simply the hook itself with the spring tongue of Exhibits A and C and the grooved lug and spring tongue of Exhibit E, I should say they are mechanically equivalent."

It is true in legal effect that a claim for a combination is not infringed if any one of the elements is omitted without a substitution of an equivalent (Union Paper Bag Mach. Co. v. Advance Bag Co., 194 Fed. 126, 138, 114 C. C. A. 204); but here we find, not only that the defendants have employed all the elements of the plaintiff's patent, but the same elements comprising the very essence of the interlocking devices, and that such devices not only perform the same function, but in all essential and material particulars in practically the same way. The real question is "whether what has been taken is the substance of the invention." Cimiotti Unhairing Co. v. American Unhairing Mach. Co., 115 Fed. 498, 504, 53 C. C. A. 230. And it is clear that, as respects the defendants' devices, they are in substance and effect the same as comprised by plaintiff's claim.

Another question remains, which is whether joint infringement has been shown. The bill alleges joint infringement by the three defendants. One of them, the Modern Sales Agency of America, suffered a decree to go against it pro confesso. As it pertains to this defendant, the only question remaining is whether the allegations of the bill are sufficient to support the decree. Masterson v. Howard, 18 Wall. 99, 21 L. Ed. 764.

In the record it appears that the plaintiff purchased on the market certain buckles, which were introduced in evidence, and heretofore referred to as Exhibits E and F. Whereupon the attorney for defendants admitted that these buckles were at one time manufactured and sold by the defendant Buckle Company, since October 18, 1910, and prior to the filing of the suit, but stated that they are not now being manufactured. Thereafter the Bliss patent, No. 1,034,681, was introduced; the patentee being the same person as Bliss, the defendant in the suit. It was stipulated by the parties that such letters patent were owned by the Buckle Company at the time that the buckles as represented by Exhibits E and F and other such buckles were manufactured and sold by the Buckle Company, and that Bliss made one or more buckles substantially as disclosed in said letters patent subsequent to the date of the issuance of the Spangler patent, and that since the issuance of such patent Bliss has been in the employ of or by con-

tract related with the Buckle Company in connection with making and selling such buckles. This record, we think, shows, prima facie at least, joint infringement by all the defendants.

The decree of the District Court will be affirmed.