PLETTENBERG, HOLTHAUS & CO. v. I. J. KALMON & CO. et al.

(District Court, S. D. Georgia, W. D.   May 21, 1917.)

War ☞10(2)—Effect of Pre-existing Civil Rights—Pending Suit by Alien Enemy.

A suit, properly instituted in a federal court by an alien against a citizen of the United States, will not be dismissed because plaintiff subsequently becomes an alien enemy, by reason of the declaration of war between the United States and the government of which he is a subject, but may be suspended on motion of defendant during the continuance of the war.

[Ed. Note.—For other cases, see War, Cent. Dig. §§ 31–36.]

At Law. Action by Plettenberg, Holthaus & Co. against I. J. Kalmon & Co. and others. On plea by defendants. Overruled.

Hardeman, Jones, Park & Johnston, of Macon, Ga., for plaintiffs.

John B. Harris and Andrew W. Lane, both of Macon, Ga., for defendants.

SPEER, District Judge. The plea here interposed is that the plaintiffs are subjects of the imperial government of Germany, and, for the reason that they are now alien enemies, their action against citizens of the United States cannot be maintained. The facts set up being admitted, the defendants, for the reasons stated, ask that the case be dismissed.

The plaintiffs, German subjects, had long been engaged in this country and Germany as cotton merchants. They had extensive dealings with American merchants and with the defendants, and have sued to recover from the latter a balance of $18,902.85, besides interest, and other sums alleged to be owing to them. They brought their action, and it was pending, before the President proclaimed that the German government was at war with the United States. The plaintiffs reside in Germany.

It is true that there are strong legal inhibitions against the commencement or maintenance during the war of a suit or action by an alien enemy. The controlling reason of this is that, if the alien enemy prevails and obtains judgment, it will obviously add the sum he recovers to the resources of the power of which he is a subject, then hostile to the country whose court he seeks.

Here, for instance, the large values the plaintiffs might recover from Americans would serve to enhance the strength of an alien and inimical power. The inhibition is, however, coextensive only with the war. It does not abate an action or suit begun while the courts are open to aliens. Here the organic law extends the judicial power to controversies between aliens and citizens of the United States. The action, instituted before hostilities began, was properly brought. It may be maintained, but to the extent only that it does not contribute strength to enemies of our country.

The only case in conflict with this view, cited by the learned counsel for the defendant, is Howes, Hyatt & Co. v. Chester & Co., 33 Ga. page 89. There a suit, begun by a resident of New York before hostilities between the United States and the Confederate States, was by the Supreme Court of Georgia ordered to be dismissed. Since, however, it turned out in the end that no alien enemy was before the court (Texas v. White, 7 Wall. 700, 19 L. Ed. 227), the opinion must be regarded as academic, or at least, notwithstanding the great authority of the court pronouncing it, not controlling in a court of the United States. Besides, it seems in conflict with Owens v. Hanney, 9 Cranch, 179, 3 L. Ed. 697. That, too, was a case from this state. The action had been brought by a British subject against a citizen of the United States, and judgment obtained in 1811. An appeal was taken, and war was declared with Great Britain on June 18, 1812, and continued at the time the case was argued in the Supreme Court. It appears from the report that counsel for the American litigant argued that the plaintiff was an alien enemy, and for that reason the court ought not to affirm the judgment against a citizen of the United States. It was affirmed, however, through Chief Justice Marshall.

True, the Chief Justice said nothing on the precise point here involved. It may not, however, be doubted that it was considered by the illustrious jurist, who had been the associate of Patrick Henry in the memorable trial, Ware v. Hylton, 3 Dall. 199, 1 L. Ed. 568, in which they jointly sought to defeat enforcement of the British debts. Besides, with the evolution of law, the courts of the English-speaking peoples exhibit greater magnanimity in affording opportunity of redress to alien enemies. Notwithstanding a ruling of Sir William

Scott, afterwards Lord Stowell, made in 1799, to the contrary, the British prize courts of to-day hear any alien enemy asserting rights under a convention of The Hague Peace Conference. Shall the courts of the United States then wholly deny a hearing to one, not such when he here sought redress, but who has since become an alien enemy? To do this would not, in my judgment, accord with the spirit of our insti-tutions, nor with the spirit of our government, which disclaimed hos-tilities to the German people when it proclaimed war in defense of freedom and of a common humanity.

My conclusion, therefore, is that the action should not be dismissed, but merely be suspended while hostilities continue. This may be readily accomplished by orders continuing the proceeding from term to term, or until the declaration of peace.