Common Pleas Court of Hamilton County.

. ALEXANDER HAU ET AL V. C. A. HEILKER, EXECUTOR, ET AL.

Decided, January, 1919.               .

*Aliens—Non-Resident Enemy Aliens—Without Standing in the Courts During Continuance of War—Trading with the Enemy Act—Distinction Between Alien Enemies and Alien Friends—Possible Rights of Alien Enemy Property Custodian Not Determined.*

Citizens of a belligerent country who are resident therein are without capacity to maintain actions against citizens and residents of a country with which they are at war. This disability continues so long as the two countries remain at war, but is removed by the declaration of peace. The effect of such disability is to postpone the commencement of an action by an alien enemy during continuance of war; .or, if an action has been begun, to suspend its further progress until the return of peace.

*Heilker & Heilker*, for the motion.
*Powell & Smiley*, contra.

NIPPERT, J.

This is an action brought by plaintiffs to set aside the will of Frederick Hau, who died on the 29th day of October, 1916, and whose will was admitted to probate in the Probate Court of Hamilton County on November 9, 1916.

Plaintiffs filed their petition to set aside the will on November 5, 1917. They were, at the time of the filing of their petition, and are now, residents and citizens of Germany.

The defendant executor filed a motion to dismiss the petition on the grounds:

1. Because the action can not be maintained by citizens of a belligerent country, resident therein, against citizens of a country with which they are at war.

2. That the power of attorney under which this action was filed is of no effect because it was given at a time when a

state of war existed between the United States and Germany, and if executed and given before a state of war existed all rights thereunder are terminated by the declaration of war.

The court will first consider the rights of plaintiffs as non-resident enemy aliens, residing in a country with which the United States is at war, to bring an action against a citizen of the United States during the period of hostilities.

Alienage alone does not constitute a general disability to sue in our courts, but only alienage combined with the character of enemy. An alien friend has a right to sue in any court. An alien enemy is incapable of suing while he remains an enemy. While the question of alien friend is not raised here, the court desires to record the distinction between alien friends and alien enemies, as there seems to be a widespread misconception of the rights of alien friends and alien enemies though both being citizens of a country with which the United States is at war.

According to Justice Story—

"Alien friends come into the country, either with a letter of safe conduct, or under a tacit permission, which presumes that authority. So, if they continue to reside here after a war breaks out between the two countries, they remain under the benefit of that protection, and are impliedly temporary subjects of the country where they reside. But if the right of suing for redress of injuries which they receive were not allowed them, the protection afforded would be incomplete, and merely nominal. This claim to the protection of the courts of the country does not apply to those aliens who adhere to the public enemies of the country. They seem, upon every principle, to be incapacitated from suing either at law or in equity. * * * The disability to sue is personal. It takes away from the public enemies the benefit of the courts of a country. * * * An exception might perhaps be allowed where the alien enemy is the defendant in a suit at law in the country where he brings the bill for discovery; since it may be the only effectual means on his part to establish a perfect defense to the suit at law. And if a country will suffer an alien enemy to be sued in its courts, it is against common justice to disable him from the use of the proper means to defend himself against a dishonest or unfounded claim. * * * This dis-

ability of an alien enemy, however, is not absolute to the extent. of destroying all his future right to sue, when peace has actually taken place between the countries; for, it continues only, as the old phrase is, *donec terrae fuerint communes;* and then his right is revived. *The true effect of the disability of an alien enemy is only to suspend the commencement of any suit during the war, or, if the suit is already commenced, to suspend its further progress until the return of peace.* (See Story's Equity Pleadings, Tenth Edition, paragraphs 51, 52, 53, 54)'' (See also *Speidel* v. *Barstow Co.,* 243 Fed., 621.)

These principles of the rights of aliens have been embodied in our state and federal decisions handed down since the beginning of hostilities between the United States and the Central Powers, April 6, 1917.

Shall the courts of the United States wholly deny a hearing to an alien enemy, not such when he sought redress, but who has since become an alien enemy?

Judge Speer, in the case of *Plettenberg et al* v. *Kalmon & Co.,* reported in 241 Fed., 605, May 21, 1917, answers this question as follows:

''To do this would not, in my judgment accord with the spirit of our institutions, nor with the spirit of our government, which disclaimed hostilities to the German people when it proclaimed war in defense of freedom and of a common humanity.''

Judge Speer held in the above case that an action by alien enemies brought before the declaration of war should not be dismissed but merely be suspended while hostilities continue, and ordered the action continued from term to term until the declaration of peace.

Judge Grant of the Court of Appeals of Summit County, Ohio, in the case of *Nyitray* v. *McAlonan,* 27 O. C. A., 545, maintained the principles laid down by Justice Story regarding aliens residing within the United States by holding that—

''An alien, subject of a nation at war with the United States, domiciled in this country at the beginning of hostilities and not adhering to the enemy has the status of an alien *amy* and is not denied his day in court or the right to institute and

prosecute an action for damages resulting from the actionable fault of defendant. * * * The right of the government to despoil an alien resident when hostilities begin is not accorded to citizens thereof.''

See also *Posselt et al* v. *D'Espard et al*, New Jersey Chancery, April 21, 1917, reported in 100 Atlantic, page 893.

Thus we have uncontrovertible authority for holding:

1. That aliens residing in the United States, at a time when a state of war exists between their government and the United States, have a right to maintain actions within the United States the same as any citizen of the United States;

2. That citizens of countries with which the United States may be at war, residing on enemy soil, and who have brought a proceeding against citizens of the United States prior to the beginning of hostilities, will not be permitted to prosecute their action, but neither will the action be dismissed by reason of the alien enemy's status of the plaintiff, but will be continued over until the conclusion of peace.

We now come to consider the status of those enemy aliens who reside in the country with which the United States is at war and who are attempting to institute proceedings in our courts against citizens of the United States since the declaration of war, to-wit, April 6, 1917, as is the case with the plaintiffs at bar.

Plaintiffs submit that under Section 23, paragraph (h) of the Hague Peace Convention of 1907, their rights to institute legal proceedings can not be abolished or suspended.

The paragraph referred to reads as follows:

''In addition to the prohibitions provided by special conventions it is especially forbidden—

''* * * * * * * * * * * *

''(h) To declare extinguished, suspended or unenforceable in a court of law the rights and rights of action of the nationals of the adverse party.''

Lord Reading, Chief Justice, interpreted this paragraph of the Convention in the case of *Porter* v. *Freudenberg,* reported

in Vol. 1 Kings Bench Division, January 19, 1915, page 866, 875, adversely to the enemy alien plaintiff. The heading of that section is: "Of Hostilities." Section 3 is headed "Military Authority over the Territory of a Hostile State." Chapter 1 of Section 2 is entitled: "The means of injuring the Enemy; Sieges and Bombardments." The articles in it are numbered from 22 to 28. Articles 22 and 23 are as follows:

### "Article 22.

"Belligerents have not an unlimited right as to the choice of means of injuring the enemy.

### "Article 23.

"In addition to the prohibitions provided by special conventions it is particularly forbidden

"(a) To employ poison or poisoned weapons;

"(b) To kill or wound by treachery individuals belonging to the hostile nation or army;

"(c) To kill or wound an enemy who, having laid down his arms, or having no longer means of defense, has surrendered at discretion;

"(d) To declare that no quarter will be given;

"(e) To employ arms, projectiles or material calculated to cause unnecessary suffering;

"(f) To make improper use of a flag of truce, of the national flag or of the military insignia and uniform of the enemy as well as of the distinctive signs of the Geneva Convention;

"(g) To destroy or seize enemy property unless such destruction or seizure be imperatively demanded by the necessities of war;

"(h) To declare, abolish or suspend as inadmissible the right of the subjects of the hostile party to institute legal proceedings.

"A belligerent is likewise forbidden to compel the subjects of the hostile party to take part in the operations of war directed against their own country, even if they were in the service of the belligerent before the commencement of the war."

The substance of Lord Reading's interpretation of paragraph (h) is that it does not abrogate the law of England, which hitherto has not given to an alien enemy the position of *personi standi in judicio,* and that paragraph (h) must be read with the governing article of the convention, as it is placed in a

group of prohibitions relating to the conduct of an army and its commander *in the field.*

"It is to be read, in our judgment, as forbidding any declaration by the military commander of a belligerent force in the occupation of the enemy's territory which will prevent the inhabitants of that territory from using their courts of law in order to assert or to protect their civil rights."

Thus, for example, if the Commander in Chief of the American forces now occupying the valley of the Rhine were to declare that the German subjects occupying that part of Germany on the left bank of that river should not have a right to use their local courts to assert their civil rights he would be acting in contravention of the terms of paragraph (h) of Article 23 of the Hague Convention.

But even if we would not be willing to accept Lord Reading's interpretation of this paragraph of the Hague Convention, to which the United States are signatories, the claim of the alien plaintiffs in this case would fail by reason of the "Trading with the Enemy Act," passed by the Congress of the United States, October 6, 1917. Section 7 (b) of said act provides:

"Nothing in this act shall be deemed to authorize the prosecution of any suit or action at law or in equity in any court within the United States by an enemy or an ally of enemy prior to the end of the war."

The plaintiff in this case having brought this action in November, 1917, seven months after the beginning of hostilities between the United States and the country of which the plaintiffs are citizens and now residents, comes within the inhibition of Section 7, paragraph (b) of the "Trading with the Enemy Act" and he can not therefore institute or prosecute an action against citizens of the United States in courts of the United States.

The disability of an alien enemy continues only as long as the two countries are at war, and then his rights are revived. The true effect of the disability of an alien enemy is only to suspend the commencement of any suit during the war, or, if

the suit is already commenced, to suspend its further progress until the return of peace. The controlling reason of this is, that if the alien enemy prevail and obtains judgment, it will obviously add the sum he recovers to the resources of the power of which he is subject. (241 Fed., 605.)

The defendants' motion to dismiss plaintiffs' petition should therefore be granted on the ground that this action can not be brought by a citizen and resident of a belligerent country against citizens and residents of the United States while a state of war exists between the country of plaintiffs and the country of defendants.

The question whether or not under the provisions of "The Trading with the Enemy Act" and under the subsequent executive orders, the alien property custodian may interplead and the cause proceed in his name as trustee for the enemy, is not before the court.