ALFRED HUGO POSSELT et al.

*v.*

R. SEABURY D'ESPARD et al.

[Decided April 21st, 1917.]

1. In view of the express terms of the president's proclamation declaring the existence of a state of war with the German government, a suit for injunction by an individual complainant, a subject of Germany, resident in the United States, who has taken out his first naturalization papers, and by a German corporation, against persons charged with having deliberately set about to wreck a New Jersey corporation wherein complainant held stock, will not be stayed on the ground of alien enemy.

2. The treatment to be accorded alien enemies and their property within this country during a state of war, is purely a matter of public policy to be established by the proper executive and legislative governmental authorities.

On bill. On order to show cause.

*Messrs. Lintott, Kahrs & Young (Mr. Joseph Kahrs),* for the complainants.

*Mr. Randolph Perkins,* for the defendants.

LANE, V. C.

A preliminary objection is made to the prosecution of the cause upon the ground that the complainants are alien enemies. The facts are conceded. The individual complainant is a subject of Germany, resident in this country, and has taken out his first papers. The corporation complainant is a subject of, and resident in, Germany. The bill is for the preservation of the rights of the complainants as stockholders in a New Jersey corporation and also in the interest of the New Jersey corporation for the protection of its rights against the action of the defendants. The German corporation is a majority stockholder, practically the owner, of the New Jersey corporation. The charge is that the defendants have deliberately set about to wreck the New Jersey corporation. No money decree is prayed for. If I should deny relief upon the ground stated by the defendants, then the property of alien enemies within this country, acquired in time of peace, may be ruthlessly taken away from them, not by the government, but by individuals, subject only to the restraint of criminal law. I am familiar, of course, with the very many learned opinions of publicists of other days, and also with the opinions of the supreme court of the United States, but I think that at this time to attempt to consider them in detail would unduly extend this opinion, and, in the view that I take of the present situation, would be wholly unwarranted. The right of government to confiscate property of alien enemies and close the doors of its courts to them, whether resident here or elsewhere, may be conceded. Whether that right is to be exercised is a matter of policy. The modern trend is to discourage interference with property rights, whether of friends or enemies, in time of war, except so far as may be necessary to effectively accomplish the objects of the war. The

solution of the problem now before me, I think, is found in the president's message to congress, which, in view of the nature of its reception by congress and the action of congress under it, has become the voice of the country; and the president's proclamation declaring a state of war and defining rights of residents, an official act under authority of congress. German residents who comply with needful regulations, and who properly conduct themselves, are assured that they will be undisturbed in the peaceful pursuit of their lives and occupations and be accorded the consideration due to all peaceful and law-abiding persons, except so far as restrictions may be necessary for their own protection and for the safety of the United States. To shut the door of the court in the face of an alien enemy resident here would be a distinct violation of not only the spirit but the letter of this proclamation.

With respect to the alien enemy resident in Germany the situation is somewhat different, but I think not essentially so. The president has very carefully distinguished between the German government and the German people, and the sins of that government ought not to be visited upon the people except so far as the legitimate interests of the United States require. I am convinced that there is no interest of the United States which requires the court, in advance of a definite command by the constituted authorities, to refuse to protect, at their instance, the rights of alien enemies resident abroad in property in this country. If it be said that this is in conflict with certain prior decisions, the answer is that the solution of the question depends upon public policy, and while it is not the function of the court to establish a public policy, it is the function and the duty of the court to determine, as a matter of fact, what the policy actually is, and it is the policy of the present day, not that of some years ago, that must be determined. Tolerance is the keynote of the president's proclamation, and by that I am bound. If the contention is made that to permit alien enemies resident abroad to sue in our courts would be to lend aid and comfort to the enemy, I think the answer is that either the court or the government may so act as to prevent any property coming into the possession of the enemy. I am unwilling to conceive that

either the government or the courts are powerless to prevent aid and comfort being given to the enemy without exercising the drastic power of refusing absolutely at the instance of an alien enemy to protect property rights within this country. I think the doors of the court are still open to all persons who properly behave themselves.

The result is that the motion to stay the prosecution of this cause on the ground of alien enemy will be denied.