### THE OROPA.

(District Court, S. D. Alabama. January 15, 1919.)

No. 1707.

1. WAR ☞10(2)—EFFECT ON CIVIL RIGHTS—SUITS BY OR AGAINST ALIEN ENEMIES.

The rights of an alien enemy as a party to a suit in a court of the United States are no different, whether he is a defendant or a plaintiff or libelant.

2. WAR ☞10(2)—SUIT BY ALIEN ENEMY—CONTINUANCE.

A libel in rem for wages against an Italian ship, by a seaman who was signed in Italy and came with the vessel to an American port, and who prior to suit became a resident and declared his intention to become a citizen of the United States, will not be dismissed because he is a subject of Austria-Hungary, but will be continued until the termination of the war.

In Admiralty. Suit by Memon Giuseppe against the Italian bark Oropa. On plea by claimant. Plea overruled, and case continued.

Howard & Pegues, of Mobile, for libelant.
Palmer Pillans, of Mobile, for claimant.

ERVIN, District Judge. This was a libel in which libelant seeks to recover his wages for the time he served on the Italian bark Oropa. It alleges that he was employed as a seaman October 3, 1917, at the port of Genoa, Italy, at the rate of 150 francs per month; that he sailed with said vessel from Genoa to the port of Mobile, and arrived here on March 22, 1918; that the vessel has been lying in the harbor

of Mobile for more than 3 months, and has not yet been provided with cargo, nor has she made arrangements to sail from this port; that he has demanded his wages, but the master refused to pay him; that he has been employed 8 months and 22 days; and that there is now due him in American money $75.30.

[1] The libel was filed on June 26, 1918. On August 2, 1918, there was filed by B. Andrea Ventura, as claimant of the Italian bark Oropa, a plea setting up that libelant was born in and is a citizen and subject of the empire of Austria-Hungary, with whom the United States is at war; that the said libelant was an alien enemy at the time of the happening of the matters and facts set out in said libel, and at the time of the bringing of the said suit. Wherefore the said libelant was then, and still is, a public enemy of the United States, and ought not to have and maintain any action in any court of the United States.

The matter now comes on to be heard on the plea, and on the hearing it is agreed that the matters of fact set out in the plea are true. In addition to this agreement, there was offered in evidence a declaration of intention for naturalization filed in the District Court of the United States at Mobile, Ala., by Memon Giuseppe, the libelant, on June 25, 1918, in which the statement is made that petitioner was born in Trieste, Italy, on the 29th day of October, 1896, and now resides at No. 8 Government street, Mobile, Ala.; that he emigrated to the United States of America from Italy on the vessel Oropa; that his last foreign residence was Trieste, Italy.

The question for determination is whether the libel should be dismissed, or whether an order should be made continuing the case until the conclusion of peace.

It is contended by proctor for claimant that the libel should be dismissed, and he supports this contention by citation of numerous authorities, all of them, however, old cases. On the other hand, the proctor for libelant contends that the severity of the old rule, has been so much relaxed by the modern authorities that the better rule, and one supported by the later authorities and better reason, is that the courts will look to the justice of the cause, even where an alien enemy is concerned, and will not dismiss the suit where justice requires the preservation of the rights of the alien, but will continue it during the existence of the state of war.

Claimant insists that an alien enemy has no standing in the courts of this country during hostilities. He, however, concedes that under the authorities this rule has been departed from in two specific instances, namely, where the suit was brought before the declaration of war, and, second, where the suit was brought by an alien enemy, who is a resident of this country at the time of bringing the suit; that in these two instances the court should make an order continuing the cause until the conclusion of peace.

Proctor for claimant, in criticizing some of the recent cases cited by libelant, urged that there was a distinction between a suit brought by an alien enemy and a suit brought against him.

In Johnson v. Thirteen Bales, Fed. Cas. No. 7,415, 13 Fed. Cas. page 839, the following language is used in the opinion by Judge Van Ness:

"Adopting this as the law, it becomes immaterial to inquire whether the claimants must be viewed as plaintiffs or defendants—whether the proceeding is by or against them."

It is true that in the case before Judge Van Ness he held that alien enemies had no standing in court, but I think he correctly held that there was no difference whether the alien enemy appears as plaintiff or defendant—that the same rule should be applied to him in either aspect. I therefore see no difference to be applied to a plaintiff or a defendant who is an alien enemy; but, if the courts should preserve the rights of an alien enemy defendant, they should equally preserve the rights of an alien enemy plaintiff or libelant.

[2] Among the cases cited by proctor for libelant as showing the trend of recent authorities is that of E. Lutz v. Van Heynigen Brokerage Company, 80 South. 72, from the Supreme Court of Alabama, decided October, 1918, and not yet officially reported, where it is said:

"As affecting civil rights and liabilities, it is said to be clear law that it is not his nationality, but the fact that he carries on business or voluntarily resides in an enemy country, that makes an alien enemy."

If this citation is correct, then it seems to me the present libel should not be dismissed, because, taking the facts as they appear in the libel, which was duly sworn to, and in the declaration of intention for naturalization, it appears that this libelant was signed as a seaman in Genoa, Italy, and served on the vessel, coming to Mobile from there, and that on June 25th, the day before the libel was filed, he filed his declaration of citizenship, giving his then residence as No. 8 Government street, Mobile, Ala.

One of the later cases cited by libelant is Posselt et al. v. D'Espard et al., from the Chancery Court of New Jersey, opinion by Lane, Vice Chancellor, found in 87 N. J. Eq. 571, 100 Atl. 893, where the Vice Chancellor holds that the cause should be continued pending the signing of peace, and bases this contention largely upon the proclamation issued by the President; and another is Plettenberg-Holthaus Co. v. I. J. Kalmon & Co. (D. C.) 241 Fed. 605, by Speer, District Judge, in which he says, in discussing the reason for refusing to permit aliens to sue, that if the alien enemy prevails, and obtains judgment, it would obviously add the sum he recovers to the resources of the power of which he is a subject. He then proceeds to hold that a suit brought by an alien enemy before the declaration of war will not be dismissed, but will be continued pending hostilities. While discussing the status of alien enemies, he says:

"Besides, with the evolution of law, the courts of the English-speaking peoples exhibit greater magnanimity in affording opportunity of redress to alien enemies. Notwithstanding a ruling of Sir William Scott, afterwards Lord Stowell, made in 1799, to the contrary, the British prize courts of to-day hear any alien enemy asserting rights under a convention of the Hague Peace Conference. Shall the courts of the United States then wholly deny a hearing to one, not such when he here sought redress, but who has since become an alien enemy? To do this would not, in my judgment, accord with the spirit of our institutions, nor with the spirit of our government, which disclaimed hostilities to the German people when it proclaimed war in defense of freedom and of a common humanity."

Another case cited is Speidel v. N. Barstow Co. (D. C.) 243 Fed. 621, before Brown, District Judge, who calls attention to the fact that two of the plaintiffs were alien enemies residing in Germany at the time of the commencement of the suit, but that the other plaintiffs were residents of this country at that time. He says:

"It is conceded by plaintiffs' counsel that an alien enemy resident in his own country is under disability during the war to institute and maintain suit. That this disability applies to Fredrich and Eugene Speidel seems well settled by authority. According to good authority, however, this disability does not attach to the alien enemy plaintiffs resident in this country" (citing authorities).

He then discusses the difficulty of dismissing as to two of the plaintiffs and continuing as to the others, and finally reaches the conclusion that the proper course was to continue the case until the termination of the war.

The case of The Kaiser Wilhelm II, 246 Fed. 786, 159 C. C. A. 88, L. R. A. 1918C, 795, is also cited. This was a decision before the Third Circuit Court of Appeals, opinion by Buffington, J. The court in its opinion says:

"This case is exceptional in its situation, and calls for the exercise of that range of discretion which the broad powers of a court of admiralty enable it to exercise. Such broad powers and range of discretion are, in our judgment, fittingly exercised by an order which will make due provision for, first, giving the German citizen and belligerent an opportunity to litigate his rights. if relations with his country are hereafter resumed; second, providing for adjudging, if the government hereafter so desires, its rights and liabilities, if any, in taking over libeled property of the German subject; third, adjudging hereafter what effect the taking of this ship by the government had on the claim of the British lienor, and the further obligation of the German vessel owners as between themselves. In following this course, and protecting the unprotected rights of an absent German citizen while this country is at war with the imperial government of its country, we are impelled by three all-sufficient reasons: First, the innate sense of fairness, decency, and justice, which respects the rights of an enemy; second, the broad principles of international intercourse, which leads courts and nations that believe in international rights to be the more careful to observe them toward belligerents; and, lastly, because the awarding to this German citizen, with whom our country is at war, the careful preservation until times of peace of its rights is in line with those high ideals of Anglo-Saxon justice which led the British courts year ago, in Re Boussmaker, 13 Vesey, 71, decided in 1806, to allow the claim of an alien enemy to be proved in time of war and the dividends held by the British court until peace. Indeed, the fact that our country is now at war with Germany is all the more reason why this court should most scrupulously award to this German citizen those international and equitable rights which no fair-minded people ever deny even to their enemies in times of war."

This case has been cited with approval by the United States Supreme Court in Watts, Watts & Co., Limited, v. Unione Austriaca Di Navigazione, etc., 248 U. S. 9, 39 Sup. Ct. 1, 63 L. Ed. ——.

I think that the severity of the ancient rule, which denied the rights of an alien enemy in the courts of this country, has been moderated by the trend of the modern authorities, and that the rule is at present more honored in the breach than in the observance, for, if the reason for the rule is the fact that to permit an alien enemy to recover prop-

erty is to give that property to the alien enemy during the time of war, then this purpose can be easily and effectually accomplished by postponing the hearing of a cause until peace is declared.

If, on the other hand, the rule is that an alien enemy has no standing in the courts of this country, then this rule is relaxed, and held not to apply where the suit was brought before the declaration of war, and where the suit was brought by an alien enemy resident of this country. These decisions are inconsistent with the general rule that an alien enemy has no standing in the courts of this country.

There can be no difference between the standing of an alien enemy who is a resident here, and one who has instituted suit before the declaration of war, and one who resides in his own country; if each of them is an alien enemy, and if an alien enemy can have no standing in the courts, then they can have no standing during the existence of a state of war.

The progress of modern thought and judicial opinion is growing much more liberal, and as the Supreme Court has so frequently had occasion to say, "where the reason of the rule ceases, the rule ceases," and I can see no reason for dismissing a suit now brought, knowing that, as soon as peace is declared, the same party can institute the same suit again, and it seems to me the better rule would be to continue the case until peace is declared, preserving to the parties the rights they now have for determination then.

Taking the instant case, this sailor was employed by the Italian bark Oropa, after the declaration of war by this country against Austria. He served on this bark without objection on the part of the claimant until the dispute arose as to his wages; the vessel will leave, and may never come back; the sailor has declared his intention to become naturalized, and, if his libel is dismissed, he may lose for all time the right to try the question of his wages.

I am therefore of the opinion that the case should not be dismissed, but should be continued until the conclusion of peace; and such a decree will accordingly be entered.