518        APPELLATE COURTS OF ILLINOIS.

Kristel v. Michigan Central Railroad Co., 213 Ill. App. 518.

## Anton Kristel, Appellee, v. Michigan Central Railroad Company, Appellant.

### Gen. No. 6,614.

1. ALIENS, § 9*—*right to sue*. Right of an alien enemy to sue in the courts of this country during war time discussed, but not decided.

2. EVIDENCE—*what judicially noticed*. Courts will take judicial notice of the President's proclamation fixing the status of alien enemies.

3. EVIDENCE—*what judicially noticed*. Courts will take judicial notice that the United States Government has an alien property custodian.

4. TRIAL, § 54*—*when motion to withdraw juror and continue case too late*. A motion to withdraw a juror and continue a case until after the war, on the ground that the plaintiff is an alien enemy, comes too late after plea in bar and the close of the plaintiff's case, where there is no showing of diligence.

5. ALIENS, § 9*—*prosecution of case to judgment and staying of execution until after war*. On motion to withdraw a juror and continue the case on the ground that the plaintiff is an alien enemy, after the plaintiff has put in his case, the court might let the case proceed to judgment and stay its collection until after the war.

6. DEPOSITIONS, § 22*—*when of foreign witnesses may not be barred*. In an action in Illinois for personal injuries received in another State, the plaintiff cannot bar depositions of foreign witnesses by producing the witnesses in court.

7. WITNESSES, § 206*—*when cross-examination of improper*. In an action in Illinois for personal injuries received in another State, the defendant having introduced depositions of foreign witnesses, the plaintiff has no right to cross-examine these same witnesses, whom he has produced in court.

8. WITNESSES, § 224*—*what is proper cross-examination of witness testifying as to finding of heel of shoe near railroad crossing*. A witness in an action against a railroad company for personal injuries having testified that he found the heel of a shoe near the crossing, may be asked on cross-examination if he did not tell others that he picked it up near where the plaintiff was lying, a considerable distance from the crossing.

9. APPEAL AND ERROR, § 1241*—*when party may not complain of instructions*. A party cannot be heard to complain of an instruc-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

SECOND DISTRICT—FEBRUARY, 1919.     519

Kristel v. Michigan Central Railroad Co., 213 Ill. App. 518.

tion because of the same language which he has embodied in his own instructions.

10. INSTRUCTIONS, § 98*—*when instruction relating to interest of party properly refused.* An instruction having been given concerning the interest or lack of interest of the witnesses in general, it is not error to refuse an instruction authorizing the jury to consider the interest of the plaintiff in weighing his testimony.

11. RAILROADS, § 697*—*what constitutes variance in action for injuries received at grade crossing.* In an action against a railroad company for personal injuries received at a grade crossing, plaintiff cannot recover on evidence showing that the accident occurred while he was walking on the right of way some distance from the crossing.

12. NEW TRIAL, § 51*—*what not covered by objection in motion for, that verdict is against evidence.* An objection in a motion for a new trial that the verdict is against the evidence, applies only to the general verdict and not to answers to special interrogatories; such special findings not having been included as ground for new trial cannot be assigned as error on appeal.

13. RAILROADS, § 738*—*when contributory negligence in passing over tracks at crossing is shown.* Evidence reviewed and held to indicate that the plaintiff, in an action for damages for personal injuries received in a railroad grade crossing accident, proceeded carelessly across the tracks after one train had passed without looking for other approaching trains.

Appeal from the Circuit Court of Will county; the Hon. ARTHUR J. DE SELM, Judge, presiding. Heard in this court at the October term, 1918. Reversed and remanded. Opinion filed February 8, 1919. Rehearing denied and opinion modified April 9, 1919.

O'DONNELL, DONOVAN & BRAY, for appellant; WINSTON, STRAWN & SHAW, of counsel.

FINN & MILLER, for appellee; MUNSON T. CASE, of counsel.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

On the evening of September 26, 1916, Anton Kristel was struck by a westbound passenger train on a sidetrack of the Michigan Central Railroad in the City of

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Gary, Indiana, and was very seriously injured. He brought this suit in the Circuit Court of Will county, Illinois, against the railroad company to recover damages for said injuries and filed a declaration containing ten counts, in each of which he alleged that the accident occurred on the Taft street crossing, and in which he alleged negligent operation of the train; failure to give the statutory signals; permitting an automatic bell signal, upon which plaintiff relied, to be out of order, so that it failed to ring; that the headlight of the locomotive that struck him was dim and weak and insufficient; that defendant maintained street lights at said crossing and permitted them to be unlighted at the time in question; that when plaintiff was struck he fell on the engine in a position of peril, and the railroad servants failed to exercise ordinary care to discover his position of peril and stop the train; that defendant's servants wilfully operated said engine and train so as to strike him, and drag him, and wilfully failed to keep any lookout for persons on said crossing. Each count alleged that plaintiff was in the exercise of due care. Defendant filed the general issue, and there was a trial and a verdict for plaintiff for $11,000. Defendant moved for a new trial, and that motion was denied. Plaintiff had judgment on the verdict. Defendant appeals. There was no evidence of any wilful misconduct by the servants of defendant, and no evidence that defendant had maintained the street lights at the Taft street crossing. Gates were maintained at said crossing in the daytime, and no gates were down when this accident occurred, but plaintiff testified that he knew the gates were not operated after 6 o'clock p. m. and this accident happened at 8 p. m. or later, so that plaintiff did not rely upon gates for protection.

On cross-examination of plaintiff it was ascertained that he was born in Austria; that he came to the United States in 1907 and afterwards went to Canada and afterwards returned to the United States; that he

was not a citizen of the United States but took out his first papers in September, 1917, and that he was working for the Illinois Steel Company at Gary, Indiana, when he was hurt. At the close of the case in chief for plaintiff, defendant moved to withdraw a juror and to continue the cause until the termination of the war between the United States and Austria. This motion was denied. One of the points in defendant's written motion for a new trial was that plaintiff, being an alien enemy, he is not entitled to prosecute this suit during the continuance of the war. One of the assignments of error here is to the same general effect. It is a general rule of international law that an alien enemy is not permitted to sue. 7 Moore's International Law Digest, 253, where authorities are collected. In *Masterson v. Howard*, 18 Wall. (U. S.) 99, on p. 105, the court said that the existence of war closes the courts of each belligerent to the citizens of the other. Such is the general sense of *Matthews v. McStea*, 91 U. S. 7. In *Seymour v. Bailey*, 66 Ill. 288, on p. 297, the court, quoting from Bacon's Abridgment, said: "By the policy of the law, alien enemies shall not be admitted to actions to recover effects which may be carried out of the kingdom to weaken ourselves and enrich the enemy." Later in said opinion our Supreme Court said that this rule denies to the citizens of each belligerent the right to bring suits in the courts of the country with which their own is at war; that the character of alien enemy carries with it a disability to sue. In 40 Cyc. 328, it is stated: "The right of an alien enemy to sue a friendly citizen in the courts of the latter's country is suspended during the war." Many authorities are cited on that and succeeding pages. Story's Equity Pleadings, secs. 51, 724. To this rule several modifications have gradually arisen. Sometimes a treaty between two countries expressly provides that if war arises between said countries, the citizens of one, resident in the other, shall be permitted to exercise certain rights in the country where they

reside, and such provisions, designed expressly for a state of war, are usually enforced by the courts of the country where the alien enemy resides. In volume 1 of a work issued by the United States Government entitled "Treaties and Conventions between the United States and Other Powers," beginning on page 29, are set out the treaties between the United States and Austria-Hungary down to 1909, and they do not contain any such provisions. Sometimes a country at war finds it expedient for its own interests to license a citizen of an alien enemy to carry on trading with such country or its citizens; and where a government grants such a license, its courts will protect that alien enemy while conforming to the license. The third and more common modification is that while a citizen of one country is permitted to reside in the country with which its own country is at war and to there labor or carry on business or own property, such citizen of an enemy country will be protected so long as he does not violate the laws of the country where he resides, and especially so if his residence there is permitted by the laws of that country. In *Clarke v. Morey*, 10 Johns. (N. Y.) 69, it is said that it has become the practice of nations "that the subjects of the enemy (without confining the rule to merchants), so long as they are permitted to remain in the country, are to be protected in their persons and property, and to be allowed to sue as well as to be sued." The attitude of a government towards the resident citizens of an alien enemy is frequently declared by statute or by proclamation by the proper authority. Courts take judicial notice of such proclamations. Reynolds' Stephen's Digest of the Law of Evidence, arts. 58 and 33. By a resolution passed by Congress on December 7, 1917, war was declared to exist between the United States and Austria-Hungary. On December 11, 1917, the President, pursuant to statutes of the United States, issued a proclamation in which he enjoined all citizens of Austria-Hungary resident within the United States

to preserve the peace and to refrain from crime and from actual hostility and from giving aid or comfort to the enemy and to obey regulations promulgated by the President; and it continued as follows: "and so long as they shall conduct themselves in accordance with law, they shall be undisturbed in the peaceful pursuit of their lives and occupations and be accorded the consideration due to all peaceful and law-abiding persons, except so far as restrictions may be necessary for their own protection and for the safety of the United States; and towards such of said persons as conduct themselves in accordance with law, all citizens of the United States are enjoined to preserve the peace and to treat them with all such friendliness as may be compatible with loyalty and allegiance to the United States."

In *State ex rel. Constanti v. Darwin* (Wash.), 173 Pac. 29, it was said: "If such persons shall be undisturbed in the peaceful pursuit of their lives and occupations and be accorded the consideration due all peaceful and law-abiding persons, we think it follows that they are authorized to maintain actions to secure to themselves their lawful occupations." Authorities are there cited to sustain that position. That opinion derives emphasis from the fact that one member of the court dissented on that point. In *Krachanake v. Acme Mfg. Co.*, 175 N. C. 435, 95 S. E. 851, the same doctrine was held, based upon the authorities and said proclamation and the Act of Congress known as "Trading with the Enemy Act." The Supreme Court of Michigan, in *Mittelstadt v. Kelly*, 168 N. W. 501, held that an alien enemy, residing here and conducting himself properly under the law of our land, has the right to the protection of the law and may assert that right in our courts. See also, *Fritz Schulz, Jr. Co. v. Raimes & Co.*, 99 N. Y. Misc. 626, 164 N. Y. Supp. 454, and *Arndt-Ober v. Metropolitan Opera Co.*, 102 N. Y. Misc. 320, 169 N. Y. Supp. 304, and 182 N. Y. App. Div.

524     APPELLATE COURTS OF ILLINOIS.

Kristel v. Michigan Central Railroad Co., 213 Ill. App. 518.

513, 169 N. Y. Supp. 944. In *Posselt v. D'Espard*, 87 N. J. Eq. 571, 100 Atl. 893, it is said: "To shut the door of the court in the face of an alien enemy resident here would be a distinct violation of not only the spirit but the letter of this proclamation." Other considerations support the ruling of the court. In *Kershaw v. Kelsey*, 100 Mass. 561, on p. 564 (a case containing a reference to many authorities on this general subject), it was said that the reason for allowing this defense is "that the fruits of the action may not be remitted to a hostile country and so furnish resources to the enemy." The same suggestion is found in other cases above cited by us. We take judicial notice that the United States Government has an alien enemy property custodian, who has taken possession of much alien enemy property in this country during this war, and it would be his duty to prevent the proceeds of this judgment being transferred to Austria during this war. Again, when this judgment was entered, this railroad had been taken over by the government of the United States, and if paid during this war the judgment would be paid by the United States, and it therefore has ample power to prevent the avails of this judgment reaching Austria during the war. Other suggestions occur to us. Some of the authorities hold that this defense must be interposed by plea; some say by plea in abatement, others by plea in bar. An authority above cited by us will lead to a form for such a plea of alien enemy. No such plea was filed here. If such a plea is not required by our practice, still there is nothing to show but that officers and attorneys for the defendant knew before the trial began that plaintiff was an alien enemy. In such case they should have presented the motion in time, so that, if granted, plaintiff would not be put to the expense of bringing his witnesses from Gary to Joliet. It would have been a serious injury to plaintiff to permit such a motion to be granted in the middle of the trial. Ten witnesses for plaintiff had been examined before this motion was made. When

made at that time, without any showing of an excuse for the delay, the court should have at least permitted the case to proceed to judgment, and could have then entered an order staying the collection of the judgment until the expiration of the war, if the motion had been otherwise well founded. We approve the ruling of the court upon the motion. It will be observed that defendant did not raise the question of the right of plaintiff to proceed after the United States Government had taken over this railroad. That would have presented a different question which we do not decide.

Defendant offered in evidence the depositions of three witnesses taken by it in the City of Gary, Indiana. Plaintiff thereupon produced two of said witnesses and objected to the depositions, and insisted that, the witnesses being present, defendant had no right to read the depositions in evidence. Plaintiff's counsel claimed that defendant had not asked the first of said witnesses if he would attend this trial in Illinois. After this colloquy, the first deposition was permitted to be read in evidence, and immediately after the close of that deposition plaintiff called the witness to the stand and insisted on his right to cross-examine, and the court overruled objections and permitted him to proceed, though the court did not rule that he could cross-examine. Counsel for plaintiff then did cross-examine and examine the witness in chief. A similar course was pursued as to the second deposition. The cases of *Frink v. Potter*, 17 Ill. 406; *Bradley v. Geiselman*, 17 Ill. 571; and *Board of Trustees v. Adler*, 49 Ill. 311, show that plaintiff had no right to pursue the course which he did. Plaintiff saw fit to bring this suit in another State than that in which the accident happened and where the witnesses mainly resided. The law gave defendant a right to take these depositions. It could not safely rely upon any promise by a witness to attend in another State. It could not enforce the attendance of witnesses in another State. Plaintiff's counsel appeared when the depositions were

526    APPELLATE COURTS OF ILLINOIS.

Kristel v. Michigan Central Railroad Co., 213 Ill. App. 518.

taken and cross-examined them. The course pursued was calculated to prejudice the jury against the depositions, and to lead the jury to believe that the depositions were subject to suspicion. Under the authorities cited plaintiff had no right to a further cross-examination of said witnesses. His only right was to call them in rebuttal after defendant's proofs were closed. Defendant's rights were violated over its repeated objections, whether the further oral examination in open court was considered as a cross-examination or as the production by plaintiff of proof in rebuttal. These witnesses testified to matters vital to the defense. Gregory, a witness for plaintiff, having testified concerning the heel of a shoe which he said was found upon the rail at or near the street crossing, was asked on cross-examination if he did not state to a certain person at a certain time that he found it near where plaintiff was lying right after the accident, which was shown to be a considerable distance west of Taft street (and probably 300 feet or more), to which an objection was sustained. We are of opinion that defendant should have been permitted to make that inquiry of the witness on cross-examination.

Plaintiff's fourth instruction was directed to the care required of plaintiff "before and at the time of receiving the injury." It is argued this was incorrect because it might have been understood by the jury to mean immediately before receiving the injury and after plaintiff had put himself in a place of danger, whereas it is insisted the rule is that he must have exercised due care before he put himself in a place of danger, as well as afterwards. This would present a serious question but for the fact that defendant embodied the same language, or substantially the same, in two instructions which the court gave at its request. This bars defendant from questioning its correctness. The court gave instruction No. 15, requested by defendant, which specified matters which the jury should consider in determining on which side was the pre-

ponderance of the evidence, and included in such items the interest or absence of interest of the witnesses in the result of the case; and it refused instruction No. 42, requested by the defendant, which authorized the jury in considering the credence to be given to the testimony of the plaintiff to consider that he is the plaintiff and interested in the result of the suit. It is urged that defendant was entitled to have said last instruction given. It is insisted by plaintiff that instruction No. 42 was improper in any event, and, if proper, was sufficiently covered by instruction No. 15, given. Defendant cites cases where No. 42 has been approved, and its refusal held reversible error and plaintiff cites cases where it has been held error to give it. In *Hartshorn v. Hartshorn*, 179 Ill. App. 421, we collected the chief cases pro and con on that subject up to that date, 1913, and held that where both parties were individuals and able to testify, it was error to give the instruction aimed at the evidence of only one of the two parties, but that where one of the parties was a corporation and unable to testify, it was proper to give the instruction, directed to the testimony of the only party who could testify. Later decisions have cast doubt upon the propriety of giving such an instruction as No. 42, even when a corporation is the sole party on one side. In this state of the decisions, we conclude to abide by our opinion in *Nau v. Standard Oil Co.*, 154 Ill. App. 421, wherein we held that where a party requested instructions, such as Nos. 15 and 42 in this case, the giving of the general instruction, such as No. 15, was a sufficient reference to the interest of the party, and that the refusal of such an instruction as No. 42 was not error in such a case. The instruction given for plaintiff on the measure of damages is questioned as not requiring the jury to base their verdict on the evidence, but we think it sufficiently directs the jury to the evidence as the basis for their verdict.

Defendant submitted to the jury the following special interrogatory: "Was the plaintiff on the Taft

street crossing when struck by the defendant's train"? This question was answered in the affirmative. It is contended by defendant that this answer is not supported by the preponderance of the evidence. We are of the opinion that the preponderance of the more credible testimony warrants the conclusion that plaintiff was struck a considerable distance west of the Taft street crossing on the private right of way of the defendant, and if the jury had so found, plaintiff could not have had judgment, both because the declaration in each count charged that plaintiff was struck upon the Taft street crossing, and because, if struck at a point a considerable distance west of that crossing, he was a trespasser according to the evidence now before us, and the company owed him no duty except to avoid wilfully injuring him after his presence there was discovered, and the evidence did not show any such wilful conduct. But defendant filed a written motion for a new trial and, though it therein asserted that the verdict was contrary to the evidence, it did not make any point that the special verdict was contrary to the evidence. It is held in *Avery v. Moore*, 133 Ill. 74; *City of Aurora v. Rockabrand*, 149 Ill. 399; *Pennsylvania Coal Co. v. Kelly*, 156 Ill. 9; *Empire Laundry Machinery Co. v. Brady*, 164 Ill. 58, and *Voigt v. Anglo-American Provision Co.*, 202 Ill. 462, that the objection that the verdict is against the weight of the evidence applies only to the general verdict and not to the answers to special interrogatories, and that the special findings, when not mentioned as a ground for a new trial, cannot be assigned as error in the Appellate Court and the judgment cannot on that ground be reversed. The authorities above cited have been followed in numerous cases in the Appellate Court for the First District, and also in the Appellate Court for the Fourth District. Defendant therefore cannot have a reversal on that ground.

Defendant contends that, assuming that the accident took place on the Taft street crossing, the pre-

ponderance of the proof shows that the plaintiff was not in the exercise of due care for his own safety, but was guilty of contributory negligence leading to his injury, and that defendant was not guilty of any negligence charged in the declaration and occasioning plaintiff's injury. Plaintiff had been in a saloon north of the railroad and on or near the east side of Taft street for 20 or 25 minutes in the evening. According to his own account he came out, went south across the railroad on the east side of Taft street, and then east on a street running parallel with the railroad to a shoe shop and, not finding the proprietor in, he retraced his steps, went west to Taft street and north on the east side of Taft street until he reached the railroad. At that place the railroad had four tracks. The south track, nearest to plaintiff, was a switch track. Then came the eastbound main track, then the westbound main track, and the north track was a switch track. When plaintiff reached the railroad crossing going north, according to his version of what happened, he waited for a freight train to pass on the eastbound track and then started ahead. On the north switch track a local passenger train was slowly proceeding west from the east end to the west end of that switch track, waiting for a fast passenger train to pass it on the westbound track, going west. It was proceeding at slow speed, and we are of opinion that the more credible evidence should have led the jury to find that its bell was ringing and that it had a sufficient headlight, and that the crossing bell was also ringing. Apparently, the jury should have found that plaintiff, when the freight train had passed east, carelessly went across the other two tracks without looking east. Others saw the headlight coming. It would serve no useful purpose to discuss the evidence of the several witnesses. But we conclude that a new trial should be awarded, for the reasons herein stated.

The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*