OTTO VON PETERSDORFF, Plaintiff, *v.* INSURANCE COMPANY OF NORTH AMERICA, Defendant.

City Court of New York, Special Term, New York County, January 31, 1944.

*Emanuel H. Reichart* for defendant.

*Abraham J. Heller* and *Emil K. Ellis* for plaintiff.

CARLIN, J. This is an application to stay all proceedings in this action for the duration of the war on the ground that the plaintiff is an enemy alien, not a resident of the United States.

The plaintiff is a German national who came to the United States in August, 1939, traveling on a German passport and a visa issued by the United States Consulate in London, England, which permitted him to enter the country as a temporary visitor for a period of six months expiring February 17, 1940. But

plaintiff stayed beyond February, and in April, 1940, filed an application for an extension. At length, in November, 1942, the following order concerning plaintiff was issued by the Board of Immigration Appeals of the Department of Justice: " It is directed that an order of deportation not be entered at this time but that the alien be required to depart from the United States without expense to the Government, to any country of his choice, within 90 days following the issuance to him of an exit permit, or within 90 days following the date on which exit permits cease to be required in such cases, whichever shall come sooner, on consent of surety, the alien meanwhile to be required to remain in the United States."

Defendant asserts that plaintiff is not a resident, that he overstayed his time, and that he is precluded, as an enemy alien, from suing in the Federal or State courts, for the duration of the war. However, I believe that for the purpose of maintaining an action, and under the Trading with the Enemy Act (U. S. Code, tit. 50, Appendix, § 1 et seq.), plaintiff should be regarded as a resident. Under that Act a resident enemy alien will not be prevented from suing in the courts of the nation or of any State unless a proclamation is issued by the President pursuant to subdivision (c) of the first part of section 2, defining " enemy," barring any " individuals * * * or class of individuals, as may be natives, citizens, or subjects of any nation with which the United States is at war," even though such individuals or class of individuals may be resident in the United States, from maintaining an action. (See Bulletin of United States Department of Justice, N. Y. L. J. Feb. 5, 1942, p. 545, col. 6; U. S. Law Week, Feb. 10, 1942, p. 2493.) No such proclamation has been issued by the President.

I do not say that the plaintiff is to be regarded as a resident for all purposes or under other statutes not germane here. " Residence " is a variable word and its precise meaning often depends upon the setting in which it is found. I hold only that plaintiff's residence in the United States, although impermanent, is sufficient to enable him to maintain the action. The order of the Board of Immigration Appeals, above quoted, provides that plaintiff is not to be deported " at this time " but that he may be required to leave the country within ninety days after an exit permit is issued to him or within ninety days after such a permit is no longer necessary. Thus, he is permitted to live here for a period of indefinite duration, very likely until the end of the war with Germany and, although his stay is subject to termination after ninety days, he is allowed and

indeed required to remain under conditions which make his residence, although temporary, not transient. Although it is true that he came here as a temporary visitor, the force of circumstances, the impossibility of returning him to his own land at this time, has made him more than a visitor merely passing through the country.

In these circumstances he is entitled to the protection of our laws; otherwise he would have no civil redress though his person were injured and his property plundered. The safety of the country does not require a result so harsh, and it has long been a principle of the common law that an enemy alien, resident within the country, may seek the protection of its laws even if he is " interned or incarcerated ". See discussion of that principle in *Petition of Bernheimer* (130 F. 2d 396) wherein are cited various English and numerous American cases, beginning with the decision of Chancellor KENT in *Clarke* v. *Morey* (10 Johns. 69) and including the following quotation from the opinion of Mr. Justice HOLMES in *Birge-Forbes Co.* v. *Heye* (251 U. S. 317, 323): " There is nothing ' mysteriously noxious ' * * * in a judgment for an alien enemy. Objection to it in these days goes only so far as it would give aid and comfort to the other side." In *Clarke* v. *Morey* (*supra*) it was held, as stated in the headnote, that for the purpose of suing " it is not necessary * * * that such aliens should have letters of safe conduct, or actual license to remain in the *United States*, but a license and protection will be implied, from their being suffered to remain, without being ordered out of the *United States* by the executive." As Chancellor KENT said, at page 72: " The license is implied by law and the usage of nations; if he came here since the war, a license is also implied, and the protection continues until the executive shall think proper to order the plaintiff out of the *United States* * * *. Until such order, the law grants permission to the alien to remain, though his sovereign be at war with us. A lawful residence implies protection, and a capacity to sue and be sued. A contrary doctrine would be repugnant to sound policy, no less than to justice and humanity."

This plaintiff has not been ordered out of the United States; on the contrary, it has been " directed that an order of deportation not be entered at this time "; he has not only been given permission but is " required to remain " for an indefinite time, during which he needs the protection of the laws of this country. In the *Clarke* case (*supra,* p. 71) Chancellor KENT stated that it " was considered in the common pleas, at *Westminster,* as a set-

tled point  *  *  *  that an alien enemy under the king's protection, even if he were a prisoner of war, might sue and be sued.'' The whole subject and these authorities are well discussed by SHEARN, J., in the important case of *Arndt-Ober* v. *Metropolitan Opera Co.* (182 App. Div. 513). The rule as to suits by enemy aliens was lately considered in *Ex Parte Kawato* (317 U. S. 69).

While within the country, the plaintiff purchased from the defendant a so-called personal-effects floater policy of insurance covering him against loss of personal possessions. He now claims to have suffered such a loss, and therefore brought the action; I can think of no reason resting in policy why he should not be permitted to maintain the suit. Certainly the enemy will derive neither aid nor comfort if the courts of this State allow plaintiff to hold defendant to the contract of insurance whereunder plaintiff gave and defendant accepted a valuable consideration.

Defendant strongly relies upon *The Leontios Teryazos* (45 F. Supp. 618). That case may be distinguished on the ground that libellant, a sailor, overstayed his shore leave and thereafter '' lived in this country illegally ''.

Unlike this plantiff, the libellant apparently received no permission either from the Board of Immigration Appeals or from any other authority to stay on for even a day, and he seems to have remained subject to instant deportation.

The motion to stay plaintiff from all proceedings in this action for the duration of the war between the United States and Germany is denied.